McMahon, Appellant, *v.* Edward Budd Mfg. Company et al.

Argued October 4, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Thomas M. J. Regan,* for appellant, cited: Slemba v. Hamilton & Sons, 290 Pa. 267; Johnston v. Payne-Yost Construction Company, 292 Pa. 509.

*J. Webster Jones,* and with him *Ralph N. Kellam* and *Irwin F. Holt,* for appellee, cited: McCauley v. Imperial Woolen Co., 261 Pa. 312; Riley v. Carnegie Steel Co., 276 Pa. 82; Smith v. Phila. C. & I. Co., 284 Pa. 35.

OPINION BY PARKER, J., March 3, 1933:

This is a workmen's compensation case in which a claim made by the injured party, but not reached during his lifetime, and a claim by the widow on behalf of herself and her minor children for his death were, by agreement, heard together. The claims were allowed by the referee and the board, but set aside on appeal to the common pleas court.

The question submitted to this court is whether there was competent evidence to support a finding by referee and board that decedent sustained an injury in the plant of the Edward G. Budd Manufacturing Company between 5 and 6 P. M., on October 31, 1929. More specifically, the defendants contend that hearsay evidence was received over their objections, and that without such evidence so received, there was no competent proof of an accident in the course of employment resulting in injury to John I. McMahon. If the evidence which was objected to as hearsay was properly received, there was sufficient proof of the claim.

On the other hand, if the evidence objected to as hearsay was incompetent, we must determine whether that which remained was sufficient to sustain the finding. "We do not analyze the evidence for the purpose of determining on which side the weight thereof lies. That is the duty of the compensation authorities. So far as we are concerned, if there is competent evidence to sustain the findings, we accept them as true": Slemba v. Hamilton & Sons, 290 Pa. 267, 268.

It is necessary to refer to the evidence somewhat in detail. John I. McMahon, the deceased, had been in the employ of the Budd Company for about nine years, and, prior to October 31, 1929, was in robust health, never having lost any time on account of illness. The claimant depends upon the testimony of Balanger, a fellow employee, that of Grace McMahon, a daughter ten years of age, and her own evidence to prove the accident. Balanger testified that between 5:00 and 5:35 P. M., October 31, 1929, John I. McMahon, the deceased, was helping the witness to elevate an electric heater which weighed five hundred pounds, and was trying to fasten the heater securely to an I-beam, or channel iron, so that it would not drop or harm any one over night; that between 5:15 and 5:35 P. M., the witness was on the top of the heater and McMahon was on one side below endeavoring to lift it up, when a hook broke and one side of the heater sagged two inches. "Q. Do you know whether this heater hit Mr. McMahon or not? A. I could not have seen it from above. Q. The heater did sag, however? A. One end, yes, sir. Q. How high from the floor was the heater? A. Four feet three inches from the floor. Q. Mr. McMahon's position was— A. He was standing on the truck on one side of that heater holding up, trying to lift it up, wasn't directly on the floor, but was one side of it—when you lift it up you don't get underneath. Q. Was there any outcry or any complaint made by Mr. McMahon at the time of the subsidence of this

heater? A. The only cry that was ever made by Mr. McMahon on the job was the lack of having a chain block to lift up the heater—there was no outcry of being hurt. Q. Did he make any declaration to you that he had in any way been injured? A. No, sir.'' The witness and McMahon stopped work at 5:25 P. M., and the witness stated that he last saw McMahon at twenty minutes to six as the two were going up on the elevator, one going to one floor and the other to a different floor for the purpose of changing their clothing.

The widow testified that her husband returned from work on October 31st at six o'clock. ''When he came in the first thing he said was he only wanted a light supper, I asked him why and he said he had just received quite a bump from a heater slipping in Budds, I asked him where he was hit and he said he was hit on the head. I looked to see if he was cut or anything and he had a lump right here (indicating on the right side midway between the frontal and occipital part of the head, the parietal region). Q. Did he tell you how this bump came? A. He did, even demonstrated with the knives and forks on the dinner table just the position the heater was in when he let go.'' She further testified that her husband returned to his work the next morning and so continued until December 6th when he returned home, but that from November 1st until December 6th, he had continuous headache and extreme nervousness. He became very ill on December 8th, was ''practically unconscious'' much of the time, and such illness progressed until he died on August 23, 1930. On cross-examination, she stated that her husband had a heavy head of hair and that she ''could not go into it to see the bump'' and did not see any laceration or bleeding, but that when she touched the lump on his head, he winced. A physician was called on December 7th, and nothing was said to him about an accident, the doctor treating him for grippe.

A daughter, Grace McMahon, ten years of age, corroborated her mother as to the statements made by her father with relation to the sagging of the heater. The testimony of Mrs. McMahon and her daughter as to the declarations of McMahon was received over the objections of the defendants.

X-ray pictures were taken of the skull during the lifetime of McMahon, and a post mortem examination was made. The medical testimony of the claimant was to the effect that there was a stellate fracture of the skull in the same location as the bump discovered by the wife on the evening of the alleged accident, and that this fracture was followed by a meningeal hemorrhage resulting in death; while the medical testimony of the defendant was to the effect that death was due to apoplexy and not connected with any injury. The medical testimony on both sides was based upon personal attendance upon the patient, X-rays, and post mortem.

We agree with the court below that the evidence of the declarations made to the wife on the evening of the alleged accident constituted hearsay. "To be admissible as part of the res gestae, declarations must be the spontaneous utterances accompanying or immediately succeeding or immediately preceding the act in question, so near in point of time and place as to be in reality a part of it, and not the designed statements of the actors, nor the recital of a past event. In other words, where the declarations 'are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thoughts created by, or springing out of, the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the res gestae' ": Riley v. Carnegie Steel Co., 276 Pa. 82, 84.

The case of Guyer v. Equitable Gas Co., 279 Pa. 5, 6, sheds light upon the precise question that we are

dealing with in this case. That was a workmen's compensation case to recover for an injury suffered by a meter reader as a result of his slipping and falling. Immediately after the fall, he entered the house of a Mrs. Sillman looking pale and saying he had just slipped and hurt himself, pointing to his back. On returning home that evening, he told his wife that he had hurt his back and leg by falling or skidding on some stairs. At this time, his leg was hard and discolored, and he was suffering severe pain. The statements to Mrs. Sillman were held competent, but those made to members of the family on returning home were regarded as hearsay. In the case of McCauley v. Imperial W. Co., 261 Pa. 312, 324, which was likewise a compensation case, the injured party, on leaving his work, told his son of an injury, and on his return to his home the same evening, recounted the circumstances to his wife. This was held incompetent. While the law does not fix a definite time within which the statements must be made in order that they may be received as part of the res gestae or as spontaneous utterances, it is well settled that there must not be a break in continuity which affords time for reflection. Here it is significant that no statements were made to the fellow employee who was present at the time of the occurrence and who was with the witness for ten or fifteen minutes afterwards.

Excluding the incompetent testimony of the wife and child with relation to the declarations of McMahon as to the sagging of the heater, there is nothing to support the finding of an accident which occurred in the course of the employment by defendant company. There is evidence that on the morning of October 31st, prior to leaving home, McMahon was in robust health, and that when he returned to his family in the evening, he was ill; that such illness progressed until death which resulted from a depressed fracture of the skull. This falls short of the proof required to make out a

case. The burden is on the claimant to show that the injury was received in the course of employment, and in this she has failed.

The facts in this case are quite similar to those in the cases of Smith v. Phila. & Reading C. & I. Co.. 284 Pa. 35, and Onofrey v. Susquehanna Col. Co., 274 Pa. 173. In the latter case, it was said (p. 174) : ''The only evidence to show that the injury, which is alleged to have caused the death, occurred during the course of Onofrey's employment, or on the premises of defendant, was testimony by claimant to the effect that on a certain night her husband left his house at nine o'clock and returned between eleven and twelve o'clock, when 'he said he fell in the mines and complained of his head.' On this meagre bit of proof the compensation authorities very properly declined to find the required basic fact that Onofrey died from an injury received in the course of his employment, and the court below correctly approved their decision.''

One additional item of evidence requires some attention. The defendants, for the purpose of identifying certain films, offered in evidence a check for twenty dollars given by the insurance carrier to the Women's Homeopathic Hospital, dated January 30, 1930. On this check, there was the following notation: ''X-ray examination rendered John McMahon, injured at Budd Mfg. Co. in payment of bill rendered.'' We are unable to see how this could be treated as an admission by the Budd Manufacturing Company, the defendant, that McMahon suffered injuries as alleged by the claimant. Even though the check were competent for that purpose, to treat it as an admission would be contrary to all the apparent facts in the case. It is most evident that the defendant at this very time was resisting the claim, and that the notation means nothing more than if it had referred to an alleged injury.

The assignments of error are overruled, and the judgment is affirmed.