Elva Mills *v.* Susq. Collieries Co., Appellant.

Argued October 24, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Henry A. Gordon,* for appellant.

*Roger J. Dever,* for appellee.

Opinion by Trexler, P. J., January 25, 1933:

William Mills was an employee of the Susquehanna Collieries Company. On May 28, 1930 while waiting with a number of other employees to be taken up on the elevator, he felt a draft and "took a chill." He went home, a doctor was called, and on May 30, 1930 he died; the cause of his death being double lobar pneumonia. His widow claimed compensation. The referee allowed it. The board sustained the referee and the court of common pleas entered judgment for the plaintiff. The company appealed. There is no difficulty in deciding that an exposure to the draft prevailing at the bottom of the elevator aggravated the illness from which plaintiff's decedent was suffering. Pneumonia is a germ disease, and some of the medical testimony, although contradicted, was to the effect that the exposure to the draft excited the disturbance which resulted in death. The question, however, still remains, was the injury accidental? While our courts have been liberal in attaching a broad meaning to the word "accidental" it is still necessary in cases such as this to show something out of the ordinary happening in order to support recovery. The subject is very fully discussed in McCauley v. Imperial Woolen Company, 261 Pa. 312, 327; 104 Atl. 617, a case which is very frequently cited. We will not repeat what was said there except to quote a short extract: "If the incident which gives rise to the injurious results complained of can be classed properly as a "mishap," or "fortuitous" happening—an "untoward event, which is not expected or designed" it is an accident within the meaning of the workmen's compensation law...... When, however, death results from germ infection, to bring a case of this character within the act of 1915, supra, the disease in question must be a sudden development from such abrupt violence to the physical structure of the body as already indicated, ["lifting

heavy weights, intense heat operating directly on the part of the body internally affected"] and not the mere result of gradual development from long continued exposure to natural dangers incident to the employment of the deceased person, as in cases of occupational diseases, the risks of which are voluntarily assumed." Gausman v. Pearson, 284 Pa. 348; 131 Atl. 247; Potter v. Claar, 289 Pa. 418; 137 Atl. 662; Diriscavagi v. Penna. Coal Co., 96 Pa. Superior Ct. 189 Gibson v. Kuhn, 105 Pa. Superior Ct. 264, and many other cases are to the same effect. The exposure must be extraordinary. In the case before us there was no evidence that a draft is an unusual occurrence in a coalmine, or that the draft to which the decedent was exposed was an unusual draft, or that the exposure to the draft at the bottom of the elevator was unusual, and not experienced generally and usually by all those who were about to enter the elevator. There were about 15 to 20 men waiting at the bottom of the shaft. They were not able to go into the one car, so it was required that the decedent wait about five minutes before he could get on the elevator. A witness for the plaintiff testified that "there was nothing unusual about the occurrence, that it occurred regularly about like that." The condition the man was in, he being sweated up, was not due to any unusual happening. The whole picture shows an ordinary event in the life of these miners. There is not an untoward element in the whole occurrence, and we are compelled to come to the conclusion that the death of the workman does not come within the compensation act.

The case cited by the board as authority for the conclusion reached by it is Jones v. P. & R. C. & I. Co., 285 Pa. 317. This does not help plaintiff's case. The experience referred to there was extraordinary. It was incidental to rescue work following the slide of a culm bank. The appellee cites the case of Broch v. Lehigh

Valley Coal Co., 296 Pa. 502; 146 Atl. 899: In that case there was an extraordinary exposure to ice and cold. In Boyle v. P. & R. C. & I. Co., 99 Pa. Superior Ct. 178, also cited by the appellee there was a flooding of the shaft and the water was dammed back so as to cover the gangway to a depth above the rails. Surely an unusual condition. Among the cases of like import is Senlock v. P. & R. C. & I. Co. 104 Pa. Superior Ct. 156; 158 Atl. 663, in which the deceased was extraordinarily exposed to cold water. In Gibson v. Kuhn, 105 Pa. Superior Ct. 264, compensation was denied because there was no unusual exposure.

The appellee suggests, apparently for the first time, that the employer not having furnished an empty cage to five employees when they were waiting at the bottom of the shaft there was a violation of the mining act, and that the chill which the employee had was due to the extraordinary exposure by reason of his waiting for an elevator to take him up. We cannot find anything in the testimony that would sustain any proposition of this kind. The evidence discloses that when the decedent came to the bottom of the elevator there were fifteen to twenty men waiting there to be hoisted, necessarily the rule of "first come first served" would prevail, and the "bottom man" told the witness that he with the others had to wait until they hoisted two cars. There is no testimony to show that a party of five of which decedent was one was not served as its turn came. Rule 17, p. 197, Act of June 2, 1891 P. L. 176 provides a maximum load of ten persons and when five are ready to be hoisted they shall be accommodated and not required to wait until a maximum load is available. It has no application to the present case.

The judgment of the lower court is reversed.