## Brown v. Moss (Ocean Accident and Guarantee Corp., Appellant).

Argued October 17, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*J. Webster Jones,* of *Jones & Poole,* for appellant.

*Maurice S. Levy,* for appellee.

OPINION BY KELLER, P. J., January 31, 1936:

This is a workmen's compensation case. The claimant's husband, Jesse Brown, died on April 9, 1934, of lobar pneumonia. The important question involved in the appeal is, whether there is evidence in the record to support the findings, (1) that claimant's husband suffered an accident in the course of his employment with the defendant, Hattie Moss, and (2) that the effects of such accident were the predisposing cause of the pneumonia, which resulted in his death. We think there was such evidence. It follows that the findings of the referee and the award based thereon, which were approved by the Board, support the judgment in the court below, which must be affirmed.

The evidence is sufficient to establish that Jesse Brown, who was employed in the receiving and delivery department of defendant's store, at the corner of 17th and Walnut Streets, Philadelphia, on Thursday, March 15, 1934, was directed by his employer to clear away the snow banks which had accumulated at the edge of the sidewalks, or make entrances through them, so that customers could get into the store from their vehicles in the streets. There had been, several days before, a very heavy fall of snow and the streets and gutters in front and alongside of the store were so banked with snow that entrance could not be had to the store from the streets. To assist in the work a fire plug at Mora-

vian Street, just above Walnut, had been opened and the water turned on to flush the gutters. As a consequence the streets and gutters were filled up to the curb with slush and water. While at work Brown slipped and fell into the gutter, wetting his shoes, feet and legs up to the knee and his arms for about three inches above his wrists. He continued to work in the cold—it was a cold, raw day—for several hours. About five o'clock that evening, before he left the store, he complained of not feeling well, and when he got home that night had a chill. He was put to bed and the next morning a doctor was called who found him with a high temperature and diagnosed his trouble as pneumonia. Two days later, March 18, 1934, he was removed to a hospital suffering with lobar pneumonia. He grew steadily worse and died from that disease on April 9, 1934. He had previously been a strong well-nourished man, in good physical condition. Two doctors called by the claimant testified that in their opinion the wetting, with the exposure following it, was the predisposing cause of pneumonia. The defendant's own physician testified that it was probably a contributing factor. There is no reasonable doubt that Brown had a fall, as a result of which his legs and arms were pretty thoroughly wet. The evidence of the physicians called by the claimant sufficiently linked up this wetting and the exposure to the cold following it with the chill and the attack of pneumonia which resulted, so as to supply the causal connection between the two and justify the finding that the wetting and consequent exposure were the predisposing cause of the pneumonia from which he died. Given the evidence, it is the province of the referee and the board to make the findings of fact. Neither the court below nor this court can disturb those findings if supported by evidence. The evidence in this case is much stronger than in Waleski v. Susquehanna Collieries Co., 108 Pa. Superior Ct. 342, 164 A. 355, relied

on by the appellant, both as to the happening of an accident and as to the causal connection between the accident and the death.

The other matters complained of are not of great moment. We think the defendant was given a reasonable opportunity to cross-examine Dr. Sternfield, claimant's witness. While a reasonable latitude is allowed on cross-examination, hypothetical questions must not assume facts not warranted by the evidence. The evidence was all to the effect that Brown died of lobar pneumonia, which is not the type of pneumonia usually caused by streptococci. The smears and cultures taken showed a great predominance of pneumococcus germs, Type I,—a most virulent form—, with a few staphylococcus aureus, micrococcus catarrhalis and streptococcus viridans germs. It is well known that such germs are frequently found in smears and cultures taken from the throats of persons in reasonably good, sound health. They mean little until the system becomes weakened or debilitated from some cause and they become active or virulent. The evidence in the record was to the effect that the case was one of pneumococcic pneumonia, rather than streptococcic. Continued cross-examination on the theory that the pneumonia was due to the streptococci rather than the pneumococci was in the face of the evidence of the claimant and was not warranted by any evidence produced by the defendant. We think it was permitted as far as could reasonably be asked, and that defendant cannot complain because the further cross-examination assigned under the first specification of error was excluded.

The variance between Dr. Truitt's testimony and his certificate, (Defendant's Exhibit D1), was of no particular importance. The certificate was clearly a mistake. Brown entered the hospital March 18, 1934 and never left it until his death. He had been treated by

Dr. Truitt for two days before he went to the hospital. When the certificate stated that Dr. Truitt had treated him from *April 1, 1934 until his admission to the hospital*—which was on March 18, 1934—it was a palpable error.

The assignments of error are overruled and the judgment is affirmed.