Roth, Appellant, *v.* Locust Mountain State
Hospital et al.

Argued December 15, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Roger J. Dever,* for appellant.

*S. H. Torchia,* with him *Charles J. Margiotti,* Attorney General, and *John T. J. Brennan,* for appellees.

OPINION BY BALDRIGE, J., January 27, 1938:

The question before us in this workmen's compensation case is whether the death of claimant's husband was the result of an accidental injury, as contemplated by section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736 (77 PS §411). The referee found that it was, and the board affirmed his action. Upon appeal, the court sustained the defendant's exceptions, and disallowed compensation.

The claimant's husband, Dr. James P. Roth, surgeon-in-chief of the Locust Mountain State Hospital, at Shenandoah, died February 28, 1933, of influenza pneumonia and attending complications. During the evening of January 28, 1933, he was summoned professionally,

on two occasions, from his home to the hospital as Dr. Gates, his assistant, who lived at the hospital and who usually looked after patients admitted in the evening, was away on a leave of absence. The following morning, about 12:30, he responded again to an emergency call. The weather was cold and windy, with snow and rain falling intermittently.

The third patient was in an "extremely critical" condition, due to a bad fracture of the skull and a broken leg. According to the custom of the hospital, an incoming patient is observed only in the dispensary, located in the basement, and, if surgical attention is required, he is removed to the operating room, which is on the top floor of the hospital, unless the injury is of a very minor nature. Dr. Roth, evidently concluding that an immediate operation was necessary and that the patient should not be subjected to any more disturbance than possible, did the very unusual, if not the unprecedented, thing of performing a major operation in the dispensary. The temperature there was abnormally low, estimated by Mrs. Grant, the attending nurse, as between forty and fifty degrees. Notwithstanding Dr. Roth, in the course of the operation, requiring about an hour, had donned an extra gown, he had a severe chill. When his work was completed, he was placed in a bed in the hospital and kept there the rest of that night. On January 31st, in accordance with plans he had made, he started for the South on a vacation. When he reached Washington, D. C., he was so ill that he was taken to a hospital, where he remained until his death, February 28th.

Mrs. Grant testified that when Dr. Roth entered the hospital that night she saw his shoes and the bottom of his trousers were wet, and that he told her "his car got stuck in the snow, in the slush, on the way up and he had to shovel his way out." An objection by the defendant to this statement of the doctor, on the ground that it was hearsay, was overruled by the referee. The

learned court below held that the evidence was inadmissible, that the referee's findings were based solely on incompetent testimony, and therefore the award could not stand. We do not agree with the court's conclusion.

We concede that it is a close question—whether the doctor's statement to the nurse should be strictly considered as part of the res gestae. It has been held that no definite time or distance from the main occurrence can be set up as a rule to determine what utterances shall be admitted as part of the res gestae; each case must depend on its own circumstances: *Com. v. Gardner,* 282 Pa. 458, 466, 128 A. 87; *McMahon v. Edward G. Budd Mfg. Co.,* 108 Pa. Superior Ct. 235, 164 A. 850; *Hunter v. St. Mary's Natural Gas Co.,* 122 Pa. Superior Ct. 300, 186 A. 325. Declarations of an injured person, made at or so near the scene of the accident and so shortly after it happened as to preclude the presumption that they were the result of premeditation or design, are generally held to be admissible. This is especially true in a workmen's compensation case, if there is any other evidence pointing to an accidental injury. It must be borne in mind that rules of evidence are not applied in this class of cases with the same rigor as in litigation before a jury; otherwise, the main purpose of our compensation statutes would oftentimes be defeated: *Johnston v. Payne-Yost Construction Co.,* 292 Pa. 509, 141 A. 481; *Smith v. Welsh Bros et al.,* 102 Pa. Superior Ct. 54, 156 A. 598; *Thompson v. Conemaugh Iron Works et al.,* 114 Pa. Superior Ct. 247, 175 A. 45; *Hunter v. St. Mary's Natural Gas Co.,* supra.

Here, the evidence does not warrant the slightest suspicion that the deceased's statement was uttered with premeditation or with an ulterior purpose in mind. While it does not definitely appear, we think it may be reasonably assumed that a very brief time intervened between the doctor's departure from home and his ar-

rival at the hospital, and that the statement was made to the first person he met. In our view, the proof of an accidental injury does not depend entirely upon the nurse's alleged hearsay testimony. Assuming, but not conceding, this portion of her testimony was not admissible, there was competent evidence that she saw Dr. Roth's wet clothing. Owing to the inclement weather, with "awful driving conditions," it could readily be inferred from what she observed that something of an unusual nature had happened to the deceased on his way to the hospital. It is entirely safe to say that, in the ordinary course of events, a surgeon does not go to a hospital, where he is to operate, with wet trousers and shoes. If such a thing occurs, one naturally concludes that he had some unusual experience. Direct evidence of the cause of the deceased's wet clothing is not necessary; it may be established by circumstantial evidence: *McCauley v. Imperial Woolen Co. et al.,* 261 Pa. 312, 325, 104 A. 617; *Thompson v. Conemaugh Iron Works,* supra.

We think the proof of the doctor's wet trousers and shoes and of the bad weather and travelling conditions was sufficient to establish a mishap or untoward occurrence that constituted an accident within the contemplation of our compensation laws.

Mrs. Grant, after testifying that she, as well as the doctor, had put on extra clothes owing to the cold temperature of the dispensary, was asked: "Q. State whether or not you went to the engine room to find out what was wrong? A. Yes; the fireman said, 'I have a fire here, but may be something wrong with the radiators, I can't get heat there.'" The attorney for the defendant objected to this question on the sole ground that it was "leading." We think that objection was too technical to be sustained in a compensation case, and was properly overruled.

It is very apparent that the deceased's entering the

unusually cold dispensary and performing an operation was an entirely different situation from that presented in *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 164 A. 724, upon which the appellees place much reliance. In that case, compensation was disallowed, as the employee, a carpenter, in the course of his employment *voluntarily* went into a refrigerating room where the *usual* temperature was from ten to twenty degrees below zero, contracted pneumonia, and died. The Supreme Court held that when the deceased entered the room he intended to expose himself to excessive cold, and that there was no mishap which proceeded from an unknown cause, or an unusual effect of a known cause, or a sudden and unexpected event which took place by mere chance. Here, the deceased met with an accident before he entered the dispensary. In view of the patient's critical condition, prompt action was evidently necessary. The humanitarian endeavor to save the life of one who was so seriously injured could not be regarded in any other sense than one of absolute necessity—and not as a voluntary act performed under usual conditions. It cannot be said that an immediate operation was not imperative, or that the exigency of the occasion did not require the use of the dispensary. True, the deceased had been in the dispensary some hours before his last entry, but there is no proof that it was then cold. We do not regard that case as ruling the one in hand.

If pneumonia is contracted by exposure to cold or water, under conditions which usually prevail, the general rule is that it is not compensable. *Mills v. Susquehanna Coll. Co.*, 107 Pa. Superior Ct. 432, 164 A. 69; *Poklembo v. Hazle Brook Coal Co.*, 116 Pa. Superior Ct. 532, 176 A. 850; *Wilkins v. McSorley*, 119 Pa. Superior Ct. 442, 179 A. 759, are examples of pneumonia cases where compensation was disallowed because the

illness that followed the exposure could have been reasonably expected.

On the other hand, if one is exposed in the course of his employment to unusual conditions, and pneumonia results therefrom, there is an accidental injury. An award was upheld where an employee died of pneumonia, contracted as a result of being drenched from the knees down in doing rescue work after a fall of culm (*Jones v. P. & R. C. & I. Co.*, 285 Pa. 317, 132 A. 122) ; where an employee, in wet clothes, was compelled to stand in a draughty place for an hour due to an accident to a car which was to take him out of the mine (*Broch v. Lehigh Valley Coal Co.*, 296 Pa. 502, 146 A. 899) ; where a miner got his clothing wet and his boots filled with water due to an unusual condition in the mine (*Senlock v. P. & R. C. & I. Co.*, 104 Pa. Superior Ct. 156, 158 A. 663) ; where the decedent was told to clean the sidewalks of heavy snow and received a severe wetting by slipping and falling into a gutter filled with water (*Brown v. Moss*, 120 Pa. Superior Ct. 336, 182 A. 777). In *Heisler v. Lincoln Realty Co.*, 121 Pa. Superior Ct. 516, 184 A. 305, compensation was allowed where the janitor of a building was required to expose himself to steam caused by the breaking of a pipe.

It is to the last class of cases this one belongs.

We think it unnecessary to discuss the medical testimony, as we do not entertain any doubt that it was sufficient to establish the causal connection between the accident and the death. Dr. Gates testified definitely that in his opinion the "chilled and wet" condition of decedent was the "initial onset" of pneumonia.

As we view this case, the proof of a wetting established a mishap—an untoward event, which was the superinducing cause of death. It was followed by exposure in an unusually cold room, where at that time

it was vitally necessary for the decedent in the course of his employment to perform an operation.

We are all of the opinion that the facts were sufficient to support the finding of the referee that there was an accidental injury within our compensation laws.

Judgment is reversed, and the record is directed to be remitted to the learned court below that judgment may be entered on the findings and conclusions of the board.