## Parks, Appellant, *v.* Miller Printing Machine Co. et al.

Argued October 27, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Samuel G. Wagner,* with him *Harry Shapera,* for appellant.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellee.

OPINION BY CUNNINGHAM, J., December 20, 1938:

James E. Parks, the husband of appellant, died in the West Penn Hospital, Pittsburgh, Pa., on April 13,

1936, from a combination of pleurisy, bronchial pneumonia, and staphylococcic blood stream infection. Asserting that his death resulted from an "accident," within the meaning of Section 301 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS § 411, suffered in the course of his employment with the Miller Printing Machine Company, his widow filed her claim for compensation. The employer and its insurance carrier answered that the deceased employee had not sustained any accident in the course of his employment, and that he came to his death as the result of natural causes totally unassociated with any accident within the intendment of the statute. The referee made, and the board affirmed, an award, but the common pleas, by a divided court, sustained the exceptions of the employer and carrier and entered judgment in their favor.

Upon this appeal by the widow from that judgment, the questions of law involved are whether the findings of the referee, adopted by the board, are sustained by competent evidence and whether the proper application of the law to those findings leads to the conclusion that her husband's death is compensable. Our examination of the 278 pages of testimony in this record has led us to a result differing from that arrived at by the learned court below.

With the exception of a conflict of opinion in the medical testimony, to which reference will be made later, the material facts are not seriously in dispute. Summarized, even in the light most favorable to the defendants, and substantially as found by the referee, they are:

Parks, a healthy man fifty years of age, was employed in December, 1935, by the Miller Company as a machinist in the large and modern plant on the lower North Side of the City of Pittsburgh in which they manufactured printing presses. He was regularly employed there, under dry and healthful conditions, until the extraordinary flood of March 17, 18 and 19, 1936, which

inundated the entire plant—the water rising to a height of ten feet above the level of the first floor and completely covering the machines, including the one at which Parks had been working. As the waters receded they left behind an accumulation of mud and debris over the machines and upon the floor of the shop. The floor expanded and buckled and everything was covered with mud and slime which had to be removed by hundreds of truck loads. An odor resembling sewer gas pervaded the plant. The employees, including Parks, were called upon to help in putting the plant into condition to resume operations. He worked six days during the week of March 25th and two and a half in April. His part of the work was to clean the mud and rust from his machine and clean the floor in its vicinity. Appellant testified that while engaged in this work he came home at night dirty, muddy and wet, with his trousers wet to the knees and his shoes soggy.

On April 3d he became ill about noon and was sent home. Dr. Harry R. Goldstein was called on the 5th and found him suffering with pleurisy and bronchial pneumonia. Parks gave Dr. Goldstein a history of working hard in mud and water to get the machinery in order and of having had a chill on April 3d. Dr. Goldstein treated him at home until the 7th and then advised that he be sent to a hospital. By that time Parks had a swelling under his right eye. Appellant notified the company of her husband's condition and the doctor's advice and was directed to send Parks to the compensation ward at the West Penn Hospital. Upon the question of causal connection this physician said: "Q. And in your opinion, doctor, would you say that the pneumonia that he had was the principal contributing factor of his death? ...... A. In my opinion, the exhaustion, the hard work, and the exhaustion of hard work of Mr. Parks, and the working in the damp waters in this plant around mud etc., directly contributed to his pleurisy and bronchial pneumonia, and it was my

opinion that this pleurisy and chest condition was a direct, immediate contributing cause in his death."

When Parks was admitted to the hospital, and to the service of Dr. L. H. Landon, he was suffering, in addition to pneumonia, with an "intensive, rapidly increasing," infection of the right side of his nose and face, which developed into "blood stream infection by the bacteria or organism which technically is known as staphylococcus aureus."

We do not regard the controversy which arose between the medical experts as to whether the pneumonia or the blood poisoning was the primary, and the other the secondary, cause of death of any importance in this case. Both were traceable to the unusual services Parks had been rendering his employer and the extraordinary circumstances under which they were performed. Counsel for the appellees identified, by the interne who made it, the hospital record containing the history given by decedent at the time of his admission. It contains, inter alia, the following: "His chief complaints on admission were: Swollen right face, severe pain in chest, and the analysis of the chief complaint, on returning home from work on the night of April 1, 1936, hands being dirty from working in a previously flooded cellar, patient picked furuncle in right nostril. The next morning he noted it had become sore and inflamed. By 4/3/36, the right face was markedly swollen, also the right eye." This record was competent evidence: Section 422 of the Act, as amended, 77 PS § 835; *Roberts v. Pitt Publishing Co.*, 330 Pa. 44, 198 A. 668.

It is true, as stated by counsel for appellees, that the compensation authorities did not make a specific finding of "accidental" death, but that is the clear meaning of their definite findings. The referee found, "That the deceased as a result of the pleurisy and pneumonia which he contracted during the course of his employment ...... was totally disabled up to April 13, 1936, at which time he died," and the board found, "His

death was due to the conditions in which he was required to work on April 3, 1936."

We think the death of Parks was so clearly and directly linked up by the testimony with the unexpected and disastrous flood, and the nature of the work in which he was engaged when the pneumonia developed, as well as the surroundings under which he was obliged to do it, were so foreign to the usual course of his employment, that this case falls on the compensable side of the line. He was regularly employed as a machinist and not as a janitor or a laborer.

Among the cases cited by the court below as examples of noncompensable deaths are *Mauchline v. State Ins. Fund et al.,* 279 Pa. 524, 124 A. 168, and *Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 164 A. 724.

We are unable to see that the Mauchline case has any application here. The trouble there was that the testimony of the only medical witness for the claimant was that the inhaling of smoke and fumes from electric generators (to which the death was attributed) over a long period of time might cause the disease of which the employee died, but that the excessive inhaling thereof on a single occasion would not. The strongest inference which could be drawn from the evidence in that case would be that the employee had incurred an occupational disease.

The Lacey case is clearly distinguishable upon its facts. There, the decedent contracted pneumonia while going about the work for which he had been employed in his usual manner and his death was the natural and probable result of voluntarily exposing himself, as he did, to an exceedingly low, but usual, temperature.

The testimony in this case shows the Miller Machine Company had approximately one hundred and forty employees, most of whom returned upon the call of their superiors to assist in removing the "filth and muck." Parks seems to have been the only one contracting pneumonia—a fact indicating that death was not the

natural, probable and to be expected, result of exposing himself to the conditions prevailing when he was stricken.

The opinion of the court below, after mentioning cases in which deaths from pneumonia were held to be compensable, continues: "On the other hand, cases are referred to where compensation was not allowed where the pneumonia was contracted under *usual and ordinary working conditions.*" (Italics supplied)

As we see it, the basic error below was in failing to note that the testimony upon this record establishes that, as to Parks, the "working conditions" under which he contracted his illness were most *unusual* and *extraordinary.*

This case was disposed of below as though Parks had never been employed at the plant as a machinist, but had come there after the flood as a member of a crew hired solely and expressly to clean up the plant in order that the machinists and regular employees might return to work. For instance, the writer of the opinion for the majority of the court below says in its course: "The object of decedent's work was the removal of the very conditions to which the pneumonia is attributed. The conditions were not unusual,—they were the usual conditions which prevail after a flood. It is true that such floods as the one described are not usual occurrences, but where a workman engages to clean up a plant after a flood, mud and dampness are foreseen and expected obstacles in its restoration."

This view of the case entirely overlooks the fact that an employer's obligation to pay the compensation provided by the statute arises out of the "contract of hiring": Section 302(a), 77 PS §461. Parks was employed as a machinist and to do the work of a machinist under the working conditions which usually prevail in a plant in which printing presses are manufactured. Neither he nor his employer ever anticipated he would be called upon to do the kind of work he was engaged

in when he became ill, nor, indeed, work of any kind under such working conditions. *Micale v. Light & S. W. Ins. Fund,* 105 Pa. Superior Ct. 399, 161 A. 600, is an illustration of a non-compensable death from pneumonia where the deceased miner was employed to, and did, work in a mine which was "uniformly and continuously wet." *Gibson v. Frank Kuhn et al.,* 105 Pa. Superior Ct. 264, 266, 161 A. 456, is another case of pneumonia contracted by an employee through getting wet in the usual course of his employment, and in which compensation was therefore denied.

We had occasion in the recent case of *Roth v. Locust Mt. St. Hosp. et al.,* 130 Pa. Superior Ct. 1, 196 A. 924, to review a number of pneumonia cases. In that case an award was sustained because the disease was contracted as a result of the decedent—a doctor—having been obliged to render professional services under unusual "working conditions." The case at bar is stronger on its facts than the one just cited. Here, both the *services* and the *conditions* under which they were required were unanticipated and most unusual.

In the opinion written by BALDRIGE, J., for this court in the Roth case it was said:

"If pneumonia is contracted by exposure to cold or water, under conditions which usually prevail, the general rule is that it is not compensable. *Mills v. Susquehanna Coll. Co.,* 107 Pa. Superior Ct. 432, 164 A. 69; *Poklembo v. Hazle Brook Coal Co.,* 116 Pa. Superior Ct. 532, 176 A. 850; *Wilkins v. McSorley,* 119 Pa. Superior Ct. 442, 179 A. 759, are examples of pneumonia cases where compensation was disallowed because the illness that followed the exposure could have been reasonably expected.

"On the other hand, if one is exposed in the course of his employment to unusual conditions, and pneumonia results therefrom, there is an accidental injury. An award was upheld where an employee died of pneumonia, contracted as a result of being drenched from

the knees down in doing rescue work after a fall of culm *(Jones v. P. & R. C. & I. Co.,* 285 Pa. 317, 132 A. 122) ; where an employee, in wet clothes, was compelled to stand in a draughty place for an hour due to an accident to a car which was to take him out of the mine *(Broch v. Lehigh Valley Coal Co.,* 296 Pa. 502, 146 A. 899) ; where a miner got his clothing wet and his boots filled with water due to an unusual condition in the mine *(Senlock v. P. & R. C. & I. Co.,* 104 Pa. Superior Ct. 156, 158 A. 663) ; where the decedent was told to clean the sidewalks of heavy snow and received a severe wetting by slipping and falling into a gutter filled with water *(Brown v. Moss,* 120 Pa. Superior Ct. 336, 182 A. 777). In *Heisler v. Lincoln Realty Co.,* 121 Pa. Superior Ct. 516, 184 A. 305, compensation was allowed where the janitor of a building was required to expose himself to steam caused by the breaking of a pipe."

The underlying findings of the compensation authorities were based upon competent evidence, and, in our opinion, a proper application of the law to them requires that judgment be entered upon the award. The assignment of error to the judgment in favor of the employer and its insurance carrier is sustained.

Judgment reversed and record remitted to the end that judgment may be entered by the court below upon the award.