Ceccato *v.* Union Collieries Company, Appellant.

Argued April 10, 1939.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*Edward J. I. Gannon,* with him *Hazlett, Gannon & Walter,* for appellant.

*Fred J. Jordan,* with him *Murray J. Jordan,* for appellee.

OPINION BY CUNNINGHAM, J., September 29, 1939:

The claim-petition in this workmen's compensation case was filed by the widow of John Ceccato in behalf of herself and two minor children. The ground upon which she sought compensation was that her husband, while repairing a pump in one of the defendant's mines on Sunday, November 10, 1935, accidentally bumped his right knee against a steel frame and thereby suffered an injury in the nature of a brush burn and bruise which became the port of entry for streptococcic germs which caused his death twelve days later.

Although the case involves a number of serious and important questions relative to the admissibility of a large part of the testimony received by the referee over

the strenuous objections of counsel for the defendant and the weight to be given it, even if admissible, we do not have the advantage of any discussion of, or independent rulings upon, these questions of law by the court below. That tribunal in entering the judgment from which this appeal was taken merely stated it did so "for the reasons set forth in the opinion of the board, by Fitzgerald, Commissioner, filed September 7, 1938."

The pump upon which the repairs were made was located more than a mile from the mouth of the mine; no one accompanied decedent on his errand or assisted in the work, which required about three hours.

Claimant, being thus unable to produce direct evidence of any untoward or unexpected happening during the course of her husband's labors that morning, sought to establish the occurrence of an "accident," (a) by proof of his declarations to fellow employees, attending physicians, several neighbors and herself, and (b) by showing that he was limping when he came out of the mine and while bathing and changing his clothes at the mine bathhouse exhibited to a fellow employee, Lewis, an injury to his knee which the witness described as a "slight brush burn and bruise," and that she saw "a little bruise, no scratches," which she "washed and rubbed" when he reached home. Upon the question of causal connection, she relied upon the expert medical testimony of Dr. J. M. Snyder to which we shall refer later.

The referee at the original hearing permitted a number of lay witnesses to testify to declarations made by decedent after he had left the premises to the effect that he had bumped his knee on a shaft of the pump. Some of these declarations were made several days after the alleged occurrence and were so clearly mere narration that there can be no excuse for cluttering up the record with them.

Claimant had the burden of proving by legally competent evidence that the infection—streptococcic lym-

phangitis of the right leg—from which her husband died, naturally resulted from violence to the physical structure of his body to which he was subjected "by an accident in the course of his employment," within the meaning of Section 301, Art. III, of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §§411 and 431.

Although it was stated in the original act that "neither the board nor any referee shall be bound by the technical rules of evidence in conducting any hearing," it was expressly provided by the amendatory act of June 26, 1919, P. L. 642, 77 PS §834, "that all findings of fact shall be based only upon competent evidence."

The ultimate inquiry for the compensation authorities and the court below was whether claimant had established her claim by evidence "answering all requirements of the law": *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 205, 133 A. 256.

Following the first hearing, at which neither of the doctors who attended decedent prior to his admission to the New Kensington Hospital testified, the referee, without making any ruling upon the challenged testimony, awarded compensation in the aggregate amount of $5499.62. Upon the defendant's appeal to the board, that tribunal, in an opinion by Commissioner Fitzgerald, held none of the testimony relative to declarations of the decedent was admissible, and as there was in the opinion of the board, no other evidence from which the happening of an accident could be inferred, the action of the referee was reversed and a disallowance entered. Before claimant's appeal to the common pleas had been disposed of, the board granted her petition for a rehearing, recalled the record, and returned it to the same referee with instructions to take additional testimony, including that of Dr. Frederick Miller, the company doctor who was called to treat decedent on November 12, and of Dr. C. L. Hobaugh, another

company doctor who later sent the decedent to the hospital. Two hearings were held by the referee at which Robert Lewis, to whom we have already referred, and Catherine Granish each testified that decedent after leaving the mine showed them a red mark on his knee and said he got a bump. The referee, after directing attention to the histories which the doctors said had been given them by the decedent, again made an award and the defendant appealed to the board. Upon this second appeal the same commissioner, in an opinion, filed September 7, 1938, and adopted by the court below, said, inter alia, "We continue of the opinion that all of these declarations are too remote to come within the exception to the hearsay rule." The opinion then continues: "However, additional surrounding circumstances have been proven by the testimony produced at these subsequent hearings held since we passed upon the merits of the case, and we are now of the opinion that there is sufficient competent testimony apart from the declarations aforesaid to cause an inference to arise from all the circumstances justifying and requiring the referee to make his findings of fact, conclusions of law and award of compensation,......"

The additional circumstances recited by the board were that decedent had no visible injury to his knee when he left his home to repair the pump; that a mark resembling a brush burn was observed by a fellow employee and others upon decedent's knee shortly after he came from the mine; that he was limping on his way home; and that the physician, called forty-eight hours later, "found pus below the knee cap, a swollen and reddened area, tender to touch, with local increase of temperature."

The inconsistency of the opinion of the board, as we read it, is that the writer, in making the following finding of causal connection, used several of the declarations of the decedent which he said he had excluded from consideration. A paragraph from the opinion

reads: "Thereafter the decedent was referred to Dr. J. M. Snyder, [at the hospital] who cared for the decedent from November 17, 1935 until the date of his death and whose testimony clearly establishes a causal connection between an injury to the decedent's right knee and the death of the decedent occurring on November 22, 1935."

Dr. Snyder described the spread of the infection after the decedent entered the hospital and stated the cause of his death was "streptococcic lymphangitis, involving the entire right leg and abdomen and chest wall and side." He expressed the opinion that the fatal infection could have entered into decedent's body "only through some break in the skin," and that the break "was in his leg." The witness explained that the "break" need not necessarily have been one that could "be seen by the naked eye," and frankly stated that his careful examination failed to disclose "any evidence of any break in the skin" in the region indicated by decedent. Referring to the ravages of the infection, Dr. Snyder said, "any injury he might have received could have done the same thing, that injury might have been so minute that it could not be clearly visible with the naked eye."

Although the witness expressed the opinion that "the bump or bruise he received from the bump on his leg was the avenue or gateway whereby the infection entered [the decedent's] body," it is perfectly clear from his testimony as a whole that he had no evidence before him that the decedent had, in fact, "received a bump on his leg," except the decedent's own declaration made to the witness seven days after the alleged occurrence.

The question whether Dr. Snyder's opinion was based upon evidence meeting all the requirements of the law, or upon mere hearsay, was squarely raised in this case and should have been passed upon by the court below.

After stating he first saw the decedent when he was admitted to the hospital on November 17th, Dr. Sny-

der's testimony continues: "Q. Did you obtain a history from him at that time? A. Yes, sir. Q. What history did you receive? By Mr. Gannon (counsel for defendant) : We wish to object to the recital as to the facts of the case given by the patient insofar as he may attempt to use them as evidence of the fact. We have no objection to the recital of the history for the purpose of making a diagnosis. ...... A. While working on the 10th of November, he was repairing a pump; that he bumped the right knee against a cast steel frame which was about this pump. He didn't pay any attention to the injury at that time and the next day his leg began to pain him and became swollen, red and sore. It continued to become more painful, and more swollen until the 17th of November when he was sent to the hospital ....... Q. Doctor, from the history you received, from your examination, and all the attending data, will you state whether or not in your opinion, that death resulted from the injury of November 10, 1935? A. In the face of not being able to obtain any history from the patient of any previous illness or any previous infection about his body, it is my opinion that this infection which resulted, was caused by this injury. I questioned him very closely and carefully regarding any infection he had prior to the injury, and any infection about his throat; any local infection about any part of his body, which he denied, and as far as I can ascertain, there was no evidence of his having had any previous infection which might have been a contributing factor."

That the conclusion of the witness was based solely upon the history given him by the decedent is apparent from the following question and answer upon cross-examination: "Q. And that infection, however, might have entered the leg through any scratch, even though it was so minute that it is not visible with the naked eye? A. That is true, but in the absence of anything to the contrary entering the history, and questioning him

about any previous infection about his body, boils or carbuncles, or abscesses, it was my conclusion that it was the gateway for this thing to enter, although any injury he might have received could have done the same thing that injury might have been so minute that it could not be clearly visible with the naked eye."

Dr. Frederick Miller's testimony was to the effect that he saw decedent on November 12, 1935; found an infection in his right knee; and was told by decedent that he hurt it while working on a pump in the mine of the defendant on November 10th. The statement of this witness continues: "He had an opening in the skin, in the right knee, even though it may have been very minute, or invisible. I think this came about from trauma or injury." This witness did not explain how he knew decedent had "an opening in the skin in the right knee" if it was "invisible." The doctor probably meant he inferred from the nature of the infection that his patient must have had such an opening.

Dr. C. L. Hobaugh, the other attending physician, testified he did not recall whether he received a history from decedent at his first visit, and after stating he made a diagnosis of lymphangitis of the right leg continued: "Q. Are you prepared at this time to express an opinion as to the cause of this condition? A. I can't definitely; no. There are perhaps several things which might have caused it. I can't say definitely as to the cause of this."

The witness said the decedent told him later that he remembered bumping his knee against a cast steel frame in the mine on November 10th, but noticed no pain until the following day. The testimony of Dr. Hobaugh would not support a finding of causal connection, even if the fact of an accidental injury be assumed. It reads: "Q. For the record, would you care to express an opinion as to the causal connection between the claimant's death, and the injury you received a history of? A. It is possible that he could have had an injury, to have

caused the lymphangitis which resulted in his death. There were no marks, that I was able to determine which led me to believe that he had a definite injury. It could have happened, but I don't remember any evidence of it."

There was evidence of two declarations to fellow employees which, under the circumstances here present, places them upon the border line. It was the duty of the court below to determine, in the first instance, upon which side of the line they fall.

Joseph Conti, decedent's father-in-law, saw him going into the mine about eight a. m. and coming out at eleven. Apparently Conti was the first person decedent met after completing the repairs upon the pump. He testified decedent told him "he had got a bump on the side of his knee fixing the pump and was going for bed." In immediate connection with this remark Conti said decedent pulled up his trousers and showed him a mark but said it did not hurt him much. There was also the remark (quoted earlier in this opinion) made to Robert Lewis while decedent was changing his clothes shortly after coming out of the mine.

Claimant has evidently produced all available evidence and as the controverted issues are all pure questions of law no purpose would be served by returning this record to the compensation authorities for further consideration. We, however, think it was the duty of the court below, in disposing of defendant's appeal to it, to consider and pass upon the serious questions of law involved under that appeal.

This case, particularly under several recent decisions of our Supreme Court, is by no means free from doubt. See *Adamchick v. Wyoming Valley Collieries Co.,* 332 Pa. 401, 3 A. 2d, 377; *Harring v. Glen Alden Coal Co.,* 332 Pa. 410, 3 A. 2d 381; *Monahan v. Seeds & Durham et al.,* 336 Pa. 67, 6 A. 2d 889. As to sufficiency of evidence of casual connection see *Elonis v. Lytle Coal Co.,* 134 Pa. Superior Ct. 264, 3 A. 2d, 995; and *Easton*

*v. Elk Tanning Co.,* 129 Pa. Superior Ct. 535, 195 A. 648. With reference to admissibility of proofs of declarations see *Broad Street Trust Co. v. Heyl Bros. et al.,* 128 Pa. Superior Ct. 65, 193 A. 397; *Harring v. Glen Alden Coal Co.,* supra; *Johnston v. Payne-Yost Construction Co.,* 292 Pa. 509, 513, 141 A. 481; *Thompson v. Conemaugh Iron Works et al.,* 114 Pa. Superior Ct. 247, 175 A. 45; *Roth v. Locust Mountain State Hospital et al.,* 130 Pa. Superior Ct. 1, 196 A. 924; *Nesbit v. Vandervort & Curry et al.,* 128 Pa. Superior Ct. 58, 193 A. 393; *Heite v. Vare Construction Co. et al.,* 129 Pa. Superior Ct. 204, 195 A. 437, (and cases there cited) and as to declarations to an attending physician: *Roberts v. Pitt Publishing Co.,* 330 Pa. 44, 48, 198 A. 668. See generally Skinner's Pennsylvania Workmen's Compensation Law, Vol. 1, 3d Ed. pp 717-9 and 753-8.

The judgment is reversed and the record remitted to the court below to the end that it may consider, and state its opinion upon, the questions of law indicated in this opinion and make such disposition of the defendant's exceptions to the award as it may deem just and proper under the provisions of the statute.