Moyer *v.* Branch Storage Co., Inc., Appellant.

Argued October 16, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*E. Mac Troutman,* with him *John H. Diefenderfer* and *Penrose Hertzler,* for appellant.

*William S. Hudders,* for appellee.

OPINION BY PARKER, J., December 14, 1939:

In this workmen's compensation case, brought by a widow for the death of her husband, the referee, the board and a common pleas court found for the claimant. The employer, the appellant, insists that the evidence will not support a finding that the deceased met with an accident in the course of his employment and is not sufficient to support a finding of causal connection between the alleged accident and the death. The judgment must be affirmed.

Henry L. Moyer was employed by defendant on April 3, 1937, and in the afternoon of that day was engaged in burning some rubbish. A truck driver also employed by defendant was passing the place where Moyer was working and noticed that Moyer seemed to be "swaying at the fire" and saw that his face was bloody. He called to Moyer but he did not answer. He then notified the foreman who in turn went out and inquired what had happened and Moyer said that "just a while before" he had fallen off the platform. This platform was about four feet in height. The foreman took him to water and washed his face. Moyer insisted he was not hurt. Moyer also acted as watchman and continued at his work until the evening of the following day, but never worked after April 4 and died on December 8, 1937.

When Moyer arrived home on the day following the accident there was still blood on his face. His daughter, who had some training as a nurse, came to his house in the evening and saw that his face was bloody and

there was a gash across his right eyebrow. She stated that he complained of a pain at the back of his neck. At or just below the neck there was a large swelling "about like an egg." The daughter took care of him, obtaining remedies from a drug store and a physician, for two and one-half weeks and until he was taken to the Sacred Heart Hospital. During this time he "zigzagged" when he walked and seemed to be in severe pain. Prior to April 3, 1937, the decedent had reasonably good health for a man sixty-three years of age and worked when work was to be had.

We have no doubt that the evidence as to the fall was competent evidence as a spontaneous utterance made so close to the event and under such circumstances as to be admissible: *McMahon v. Edw. G. Budd Mfg. Co.,* 108 Pa. Superior Ct. 235, 164 A. 850; *Roth v. Locust Mt. St. Hosp.,* 130 Pa. Superior Ct. 1, 196 A. 924. In any event, the evidence was admitted without objection and therefore has the value of direct evidence: *Broad St. Tr. Co. v. Heyl Bros.,* 128 Pa. Superior Ct. 65, 71, 193 A. 397. That the evidence so considered was sufficient to show an accident in the course of the employment is clear.

This brings us to the question of causal connection. The claimant depended upon expert testimony and the natural sequence of events to establish the connection. Roentgenograms were taken and a post-mortem examination was made. Dr. Ralph H. Henry saw and examined the injured man at the Allentown Hospital on December 6, 1937. He stated that in his professional opinion the cause of death was a "fractured vertebra and impingement of the cord." Dr. Takeo Yamashita, who conducted the post-mortem, stated that in his professional opinion the cause of death was the fracture of a vertebra with the compression of the cord with or without visible injury to the cord. Dr. J. J. Wenner agreed with those conclusions. There was other testimony that gave weight to those opinions, but the evidence recited

was clearly sufficient to support the finding of the board to that effect as to the cause of death.

Dr. Sprenkel called at the home of deceased and had him removed to the Sacred Heart Hospital on April 28, 1937. Unfortunately, this doctor died before his testimony could be taken, and Moyer was attended by Dr. Wm. A. Hausman, Jr., while he remained in that institution. He was discharged from Sacred Heart on November 5, 1937, when he returned to his home. Dr. Ralph H. Henry saw him there on December 6, 1937, and had him taken to Allentown Hospital that day where he died two days later.

We pause to refer to evidence of a prior accident that befell Moyer as the appellant makes much of that occurrence in its argument. The daughter on cross-examination testified as follows: "Q. You knew about your father having an injury to his neck some years ago? A. Yes. Q. Well, in fact, he had two injuries? A. I wouldn't say it was an injury. Q. He had a boy working with him and he was standing on a truck and threw a bundle of papers down and hit him on the neck, ever since that he had a lump? A. No. Q. You never noticed a lump? A. No, he had pain a few days, he was mad at the boy for throwing him down. Q. Don't you remember about your father falling on a pavement in the winter of 1935? A. No." Dr. Hausman testified that he had a history from Moyer "that he had been struck by some bags or something $2\frac{1}{2}$ years prior" without further details. Dr. Henry likewise stated that he had a history of a previous injury. Dr. Hersh, who took the x-rays, stated with reference to the dislocation and fracture of a vertebra: "I feel as though this is an old lesion and not due entirely to the most recent injury, as a whole area, the first three or four, is rather muddled and indistinct so that a definite outline of the lesion is difficult to obtain. This is a chronic or old dislocation of the 2d and 3d, I cannot account for the lesion, it is due to some accompanying inflammation." This testi-

mony came from the claimant and was not contradicted so we may assume, as the experts on each side did, that the deceased suffered some injury to the vertebras prior to April 3, 1937.

The claimant by expert testimony and proof of a sequence of events undertook to establish a connection between the fall from the platform and death resulting from a dislocated and fractured vertebra. The appellant attacks those proofs at two points, claiming that they were not sufficient to show an injury to the vertebra on April 3 or to charge the death to that accident to the exclusion of the previous accident, particularly urging that the claimant's expert testimony was so contradictory as to be of no evidential value, citing *Mudano v. Phila. Rapid Tr. Co.*, 289 Pa. 51, 137 A. 104.

Prior to April 3, 1937, Moyer had enjoyed good health. While he had met with some injury to his neck three years before his death, it seems to have given him little discomfort and it had not incapacitated him. There was no evidence of hospitalization or medical treatment on that account. He fell a distance of four feet and had a severe cut over his eye. As a result he was unstable in his movements and groggy, so much so that one of the experts gave it as his opinion that Moyer had suffered a mild concussion. The physicians found that the cervical vertebra had been injured. The same evening that Moyer returned home the daughter discovered a swelling the size of a hen's egg at the position of the injury and this was also observed by the attending physician two weeks later. It seems to us far fetched to suggest that it is a mere guess to say that the man struck his head or neck and injured the vertebras. The fact that the man had a previous injury to the spine is not controlling. If he had such injury that may have made him more susceptible, but if the pre-existing condition was aggravated and his death accelerated by the injury, then under the law the claim-

ant is entitled to compensation: *Lafferty v. Carbo-Oxygen Co.*, 122 Pa. Superior Ct. 425, 427, 185 A. 883.

The claimant does not rely on the fracture of the vertebra alone, which may have occurred two and one-half years before, but upon the subsequent displacement. Dr. Henry testified that the fracture had not united but that the displacement had not existed previous to the last accident. As a result the impingement of the cord occurred and death resulted. Finally, Dr. Hausman, who attended Moyer for six months while in the hospital, gave it as his opinion that the last accident would "unquestionably be probable to aggravate" the previous injury if there was such injury. While it may be open to question whether this opinion expressed by Dr. Hausman would be sufficient to support causal connection if there were no other evidence in the case (*Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 206, 133 A. 256; *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 270, 3 A. 2d 995), it does have some probative value in view of such other evidence.

Moyer never worked another day but spent the remaining eight months of his life in a hospital or confined to his home in constant pain except for a slight improvement just before he left the first hospital. The facts with reference to his condition of health before and after April 3, 1937, were fully developed and competent physicians and specialists, who had the benefit of roentgenograms, personal examination and attendance upon the injured party, and a post-mortem, interpreted the technical aspects of the facts so disclosed for the enlightenment of the lay fact finding bodies. A careful examination of the expert testimony confirms the natural inferences that a layman would draw from the sequence of events. Our conclusion is that the evidence was sufficient to sustain a finding that the accident of April 3, 1937, with resulting injury to the vertebra at least aggravated a previous injury and caused his death.

We think the appellant in its argument unduly de-

preciated the value of the expert testimony supplied by the claimant. Categorical answers, yes or no replies, by experts in compensation cases to hypothetical questions asking for conclusions where such interrogations cover the whole issue of fact that the referee or board must pass upon and the experts speaking on behalf of the opposing parties give conflicting replies, are perplexing and frequently unsatisfactory. The truth can only be reached by testing the grounds for the conclusions. Here the process was reversed and the different elements were explained from a technical standpoint and the lay tribunals were then in a position to form their own conclusions and were competent so to do.

The Mudano case, supra, has no application to the facts here disclosed. Contradictory advice proffered by a plaintiff's or claimant's experts is to be rejected when the jury is left in a position where they must guess as to which is right and where the element being examined is essential to a recovery. This does not mean that such advice is to be rejected merely because it may differ in some detail or where other evidence enables the jury to make a rational choice between such opinions. While some of the claimant's witnesses did not go as far as others and at least one witness predicated his answer on a false premise, this did not leave the referee or board in a position where they were required to make a mere guess.

There are cases in which a jury or fact finding body have not sufficient technical knowledge to pass upon the facts presented and draw a proper conclusion and the professional opinion is required (*Fink v. Sheldon Axle & Spring Co.*, 270 Pa. 476, 479, 113 A. 666; *McCrosson v. P. R. T. Co.*, 283 Pa. 492, 129 A. 568), and there are other cases in which the lay testimony without expert advice is sufficient to support an award (*Mohr v. Desimone & Sayers*, 110 Pa. Superior Ct. 44, 49, 167 A. 504, and the many cases cited therein). Injuries may be "so immediately and directly, or naturally and

probably, the result of the accident that the connection between them" may be found by a lay mind: *Davis v. Davis, Dir. Gen.*, 80 Pa. Superior Ct. 343, 345. Here, as we view the record, the referee and board were furnished with all the expert advice that was necessary to make a decision and with such advice were able to draw their own conclusion from the succession of events.

We are all of the opinion that the judgment must be affirmed.

Judgment affirmed.