Waleski, Appellant, v. Susquehanna Collieries Co.

Argued October 20, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Roger J. Dever,* for appellant.

*Henry A. Gordon,* for appellee.

Opinion by Cunningham, J., January 25, 1933:

Michaelena Waleski, the widow of Frank Waleski, alleging that the death of her husband from pneumonia was the result of an accident in the course of his employment in one of the mines of Susquehanna Collieries Company, claimed compensation for herself and minor daughter.

The employer defended upon the ground that there had been no untoward event, fortuitous happening or mishap, aside from the usual course of events, in short, no "accident", within the meaning of our Workmen's Compensation Act.

The incident, relied upon by claimant as the cause of the injurious results, was a wetting experienced by her husband while at work; the answer of the employer was that he had not been subjected to any extraordinary or unusual exposure; that nothing outside of the ordinary, usual and to be expected, incidents of his employment had occurred; and that his death came as the natural result of the progress of the disease.

From the testimony taken before him, the referee found as a fact that Waleski's death was due to "natural causes" and claimant had failed in her effort to show it resulted from an accident in the course of his employment; her claim for compensation was accordingly disallowed.

Upon her appeal to the board, the findings of fact and conclusions of law of the referee were set aside.

Among those substituted by the board were these: (4) "While in the course of his employment with the defendant company on the night of June 26, 1930, the decedent sustained an excessive wetting while working on the ditch side of the gangway, where the water was of the depth of the thickness of a sill, or about six inches," and (5) "The preponderance of the medical testimony is in effect that this wetting was the predisposing cause of the pneumonia which we find the decedent contracted while in the course of his employment with the defendant."

Based upon its conclusion of law that decedent "sustained an accidental and compensable injury......while in the course of his employment," and relying largely upon Boyle v. Phila. & Reading C. & I. Co., 99 Pa. Superior Ct. 178, the board made an award in the sum of $3,305.71.

Upon the appeal of the employer to the court below, that tribunal sustained its exceptions to the action of the board and entered judgment in favor of the employer; the present appeal is by the claimant from that judgment.

In the opinion filed for the court below by MORGANROTH, P. J., grave doubt is indicated as to the sufficiency of the evidence to support a finding that "the injury followed an extraordinary exposure to wet and cold"; without passing definitely upon that question, the court proceeded to a consideration of the medical testimony, in the light of the decisions defining the standard of proof necessary to sustain an award, and reached the conclusion that it was not sufficient to support the, above quoted, fifth finding of fact.

The assignments of error challenge the legality, under the provisions of our compensation law and the evidence on this record, of the judgment below; it,

therefore, becomes our duty to inquire whether the controlling findings of the board are supported by legally competent evidence.

There is evidence that decedent left his home, apparently in good health, about eight o'clock on the evening of June 26, 1930, to work during the night, along with several other miners and a driver, in lowering or cutting down a road in a gangway of the mine. One of his fellow workmen testified this was the first night Waleski had worked at this job. The evidence does not disclose where he had been or what he had been doing during the preceding days or nights. He began work about ten thirty and continued until three the next morning when he "started staggering around," sat down on a pipe, told his companions he was "sick" and asked the driver to take him home. This part of the roadway was wet and Waleski had been working "on the ditch side"; no water was dripping from the roof, but there was water "all over in the gangway" to a depth of about six inches; decedent and the others wore "rubber boots about to the knees." When interrogated upon the subject, none of his three fellow workmen was able to testify decedent had gotten wet at any time during the night.

The driver took him from the mine at once and drove him in a closed automobile to the office of Dr. Hughes, the company's doctor. An excerpt from the testimony of Dr. Hughes reads: "Q. I am going to ask you, Doctor, whether or not you observed his clothes? A. Yes, because I bared the man's chest to examine him. Q. What did you find about his clothing—anything—were they wet or not? A. They were not wet. Q. Had he come straight to you from the mine? A. He was brought from Richards tunnel to my office about 4:00 o'clock in the morning, by one of the workmen, in an automobile. Q. What was his condition when you examined him, Doctor? A. He

was a very sick man. He looked sick, ...... said he had chills and then he became hot after and felt sick all over and had pain. I examined his chest. Took his pulse and his respiration and saw he was a sick man, and I immediately inquired who his family physician was and he told me Dr. Jacoby. I told the driver of the automobile to take this man home immediately and call his family physician, because this man was very sick.''

Dr. Jacoby testified he arrived at decedent's home at seven o'clock that morning; that Waleski then had pleural pneumonia from which he died in about thirty hours (claimant said sixteen hours); and that he had no recollection of the patient, or any member of the family, having said ''anything about his getting wet.''

The only testimony that Waleski got wet in the mine is that of claimant, reading: ''Q. Whether or not your husband's clothing was wet when he came home from work? A. His clothing was wet and water in his bootees.''

On cross examination, the witness qualified this statement materially and admitted the only wet portions of his clothing were about four inches of the right leg of his pants, worn inside his boot, and the sock on his right foot, and that no water had entered the left boot.

When the nature and place of decedent's employment are taken into consideration, it is clear that this testimony does not support the finding of the board that he ''sustained an excessive wetting.''

The important question, however, is not how much of a wetting he got, but whether it was due to any unexpected happening, untoward occurrence, or mishap, i. e., any accident within the purview of the statute. In our opinion, this case does not fall within the line of cases of which Boyle v. Phila., & Reading C. & I. Co., supra, (where the pneumonia resulted from an ex-

cessive wetting due to unusual circumstances), and Jones v. Phila. & Reading C. & I. Co., 285 Pa. 317, (in which it was caused by an extraordinary exposure to wet and cold in endeavoring to rescue a fellow employe caught by a sudden slide), are examples, but rather within the line illustrated by Gibson v. Kuhn et al., 105 Pa. Superior Ct. 264, (where the employe, while assisting in building a roof, "got wet to the skin" by rain, developed pneumonia from the wetting, and died), and Micale v. Light & S. W. Ins. Fund, 105 Pa. Superior Ct. 399, (a case in which the decedent died from pneumonia caused by working for a considerable period of time in a portion of a mine which had been continuously wet), and similar cases.

Whatever confusion may have existed hitherto in the decisions, relative to the compensability of deaths from pneumonia, has been eliminated by the comprehensive opinion of our Supreme Court in Lacey v. Washburn & Williams Company, 309 Pa. 574. There the findings of the referee were to the effect that the decedent, employed as a carpenter, spent about an hour, making measurements for work, in the refrigerating or "hardening" room of an ice cream company where the temperature was from ten to twenty degrees below zero; that he suffered a chill, went home and developed pneumonia which resulted in his death.

Conceding that the pneumonia was contracted in the course of decedent's employment and that the attack of the pneumonic germ amounted to violence to the physical structure of his body, the Supreme Court said the question whether there had been an "accident" still remained. In the opinion, written by Mr. Justice Drew, the decisions of that court and of this court, as well as several by the House of Lords, are classified and placed on one side, or the other, of the line dividing compensable from non-compensable deaths.

The rule announced, and the effect of its applica-

tion, are thus stated: "The rule deducible from our decisions limits the right to recover compensation to cases where injury or death is due to some unexpected or fortuitous event. From what has been said, we think it can readily be understood that the exposure which caused the death in the instant case was not an accident—as that word is used in our compensation act. The chill from which the death resulted, contracted while working for an hour in a refrigerator where the temperature was from ten to twenty degrees below zero, was not the consequence of a sudden and unexpected event which took place without expectation, a mere chance or contingency. It was not the result of an untoward occurrence, not expected or designed, a mishap or fortuitous happening, aside from the usual course of events. Quite the contrary, it was a natural and usual consequence of his entering and remaining so long in such a place."

To this we may add, as stated for this court by KELLER, J., in Micale v. Light & S. W. Ins. Fund, supra, that the untoward occurrences or fortuitous happenings which, in contemplation of law, constitute an accident are objective happenings, not subjective feelings or symptoms.

The application of the rule, thus authoritatively declared, to the facts in the case now at bar compels the conclusion that the death of Waleski did not result from an "accident" in the course of his employment; there is not a particle of evidence in this case that anything, outside of the usual and ordinary course of events, happened in that gangway that night.

Moreover, we agree with the court below in its conclusion that, even if claimant had shown her husband got his foot wet through an accident in the mine, there is no evidence upon this record legally competent to sustain a finding that the wetting was the superinducing cause of his death.

The testimony of Dr. Jacoby was that Waleski had a well-defined pneumonia when he saw him at seven in the morning. When asked whether the wetting of his foot was, in his opinion, " a contributory factor in the man's death," he replied: "Well, it is possible, but not very probable, it would set in that quickly."

The strongest statement made by this witness was that if decedent got his feet wet, "it would have some bearing" on the development of the disease.

The testimony of Dr. Hughes was to the effect that decedent, when brought to his office from the mine, had a "very virulent infection"; that the pneumonic germ had "evidently been released in his body and began to show the effects of its ravages" prior to the time he told his "buddy" he was sick; that it was the kind of a case which might have "manifested itself" out of the mine as well as in it; and that while exposure is a "predisposing cause" of pneumonia, he "wouldn't altogether say the wetting did it."

The medical evidence, considered in its entirety, falls short of the standard of proof required in Fink v. Sheldon Axle & Spring Co., 270 Pa. 476, 479, referred to and reinforced in McCrosson v. Phila. Rapid Transit Co., 283 Pa. 492. See also Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 206. It has been repeatedly held that it is not enough for an expert to express the opinion that the result in question might have come solely from, or been superinduced by, the cause alleged. In order to support a finding of causal connection he must express the opinion that it most probably did come from, or was superinduced by, the alleged cause.

In Boyle v. Phila. & Reading C. & I. Co., supra, the evidence, with respect to the connection between the alleged cause and the employe's death four days later, was much stronger than in the case at bar. There the medical expert testified positively that in

his opinion "this wetting at work was the predisposing cause of the pneumonia......that is where he contracted the trouble."

Here we have nothing more than an expression of professional opinion that the wetting may possibly have been a contributory factor.

Claimant's assignments of error are without merit and must be overruled.

Judgment affirmed.