Evans *v.* Hazle Brook Coal Company, Appellant.

Argued December 15, 1938.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*P. B. Roads,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY RHODES, J., January 31, 1939:

This is a workmen's compensation case, and the appeal presents the question whether the death of claimant's husband was caused by an "accident," within the

meaning of section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §411. Deceased was in the employ of defendant as a boilerhouse chargeman and boiler repairman. He began such employment with defendant in 1918. He died on March 10, 1932, as the result of an alleged accident sustained on June 9, 1931, while in the course of his employment. A claim petition was filed by the widow of deceased on behalf of herself and two minor children. The referee awarded compensation, and the award was affirmed by the board. The court of common pleas, on appeal by defendant, affirmed the board and entered judgment for the amount of the award. This appeal by defendant from the judgment so entered is based on an alleged insufficiency of the evidence to show that deceased sustained an accident on June 9, 1931. Appellant contends that the instant case is ruled by *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 164 A. 724, and *Micale v. Light et al.*, 105 Pa. Superior Ct. 399, 161 A. 600. Outside of one exhibit showing the time worked by deceased from May 1, 1931, to August 26, 1931, appellant offered no evidence. The facts are not in dispute, and are summarized by the following findings of the referee:

"3. From the evidence adduced, including the unobjected to evidence of decedent's widow, we find that on the morning of June 9, 1931 at approximately five-thirty, the decedent left home, in apparent good health, to make emergency repairs at the Maryd boilerhouse. He was awakened at 5:00 A. M. by an employee of the defendant company and informed that No. 5 boiler had sprung a leak. The employee was directed to pull the fire in No. 5 boiler and informed decedent would report. The decedent returned home that day around 3:00 P. M., earlier than usual, in a sick condition with his forehead scalded and blistered. He complained to his wife and stated, 'I got an awful roasting in No. 5 boiler this morning.' In making repairs to these boilers after the

fires are drawn it has been the practice at this colliery to allow between sixteen and twenty-four hours to elapse before an employee enters the boiler. On this occasion the decedent entered the boiler before this elapse of time and in doing so he was subjected to an undue exposure of the steam and extreme heat within the boiler.

"4. The decedent after this incident continued his work until August 26, 1931 during which time he showed evidence of illness and consulted a physician who put him on a diet. On August 26, 1931 decedent's illness had so progressed that he was compelled to cease work. He died on March 10, 1932 of nephritis.

"5. We find that the undue exposure decedent was subjected to on June 9, 1931 was a marked contributory factor in his demise on March 10, 1932."

These findings of the referee, which were adopted by the board, are supported by the evidence, and we think that the award of compensation was properly made upon which judgment was subsequently entered. In its appeal from the Workmen's Compensation Board to the court of common pleas, appellant assigned only the fifth finding of fact as error.

On June 9, 1931, deceased was in apparent good health, and had suffered no serious illness previous thereto. Thereafter until he died the condition of his health grew progressively worse. There was no objection to any of the testimony of claimant who also testified, on cross-examination, that, on return from work at 3 o'clock that day, deceased "looked very sick and his forehead was blistered and he just dropped on a chair when he came in," and that he said " 'I got an awful roasting in No. 5 boiler this morning.' " It appears that deceased was in charge of the boilerhouse, and did the repairing of the boilers at the Maryd Collieries of appellant, and that he had been doing this work since about 1918. He was called about 5 o'clock on the morning of June 9th, when he was advised that

No. 5 boiler had sprung a leak as the result of the bursting of a water tube or flue. To install a new tube or flue deceased had to enter the boiler and replace the broken tube or flue with a new one. Before repairs of such nature were started on a boiler, sixteen to twenty-four hours were permitted to elapse after the fire had been pulled. It is a proper inference that the haste in entering No. 5 boiler to make the necessary repairs on the morning of June 9th, before it had cooled, resulted in deceased's "getting an awful roasting" and a blistered or scalded forehead. On this morning deceased was called at 5 o'clock, after which the fires in the boiler were pulled, the repairs made, and by 3 o'clock he had returned to his home. Only ten hours had elapsed from the time he was called until he had returned after completing the work on the inside of this boiler. This was contrary to the usual method of allowing sixteen to twenty-four hours to elapse before entering a boiler for repairs after the fire had been pulled.

A few days after June 9th, deceased consulted Dr. C. W. Bankes at his office in Middleport; his condition continued to grow worse, with death ensuing on March 10, 1932. Dr. Bankes, a witness called by claimant, testified that he had seen deceased on numerous occasions, prior to June 9th, for minor ailments, and that he was in apparent good health; that after June 9th he found him suffering with acute nephritis; that this was the primary cause of his death; that the contributing cause was myocardionosis, which developed from the kidney condition. The doctor also testified that in his opinion exposure to extreme heat on June 9th was a marked contributory factor in causing deceased's death. Deceased's apparent good health before June 9th, and his apparent illness thereafter, the visible manifestations of subjection to extraordinary heat that day, the testimony of claimant as to deceased's condition upon his return from work, and the

testimony of Dr. Bankes were sufficient to supply a factual basis for the referee and board's fifth finding of fact.

Do the findings of the compensation authorities establish an accident on June 9th? This is the basic issue.

If deceased's death followed as the result of an extraordinary exposure to heat while repairing the boiler on June 9th, it is compensable (*Jones v. Philadelphia & Reading Coal & Iron Co.*, 285 Pa. 317, 320, 132 A. 122), notwithstanding it was part of deceased's duties to repair boilers for appellant. Appellant earnestly contends that, if deceased suffered from exposure in repairing the boiler, there was no accident, for the reason that his usual work consisted of repairing boilers every day of the year, and that the exposure was the result of the usual and ordinary conditions under which deceased worked. If these contentions were correct, then judgment should be entered for appellant. "The criterion is not whether the act causing the injury was unusual generally speaking, but whether it was unusual and untoward in the course of the employment in which the employee was engaged": *Weissman v. Philadelphia Electric Co.*, 111 Pa. Superior Ct. 353, at page 355, 170 A. 318, at page 319. We think claimant established that deceased was not working under usual conditions when he made the repairs to No. 5 boiler on June 9th. The testimony does not disclose the reason for his entry of the boiler much sooner than usual after the fire had been withdrawn; but a scalded or blistered forehead, and an "awful roasting" were not results to be reasonably expected in the performance of his duties under usual and ordinary working conditions. See *Foster v. State College Borough et al.*, 124 Pa. Superior Ct. 492, 189 A. 786. Deceased was attempting to repair a broken water tube or flue under conditions which the compensation authorities could find, from the testimony, subjected him to unusual and extraordinary exposure to

heat within the boiler, with results not to be anticipated in the course of his regular work. See *Heisler v. Lincoln Realty Co.*, 121 Pa. Superior Ct. 516, 184 A. 305.

Surely we have here an unexpected happening resulting in "violence to the physical structure of the body," an accident under section 301 of the Workmen's Compensation Act of 1915, 77 PS §411, which was the predisposing cause of deceased's death. The connection was established by competent evidence (*Witt v. Witt's Food Market et al.*, 122 Pa. Superior Ct. 557, 564, 186 A. 275).

*Lacey v. Washburn & Williams Co.*, supra, and *Micale v. Light et al.*, supra, were cases where death resulted from pneumonia. Compensation was denied in both cases. In the Lacey case it was held that the exposure which caused the death was not the consequence of a sudden and unexpected event which took place without expectation, that it was not the result of an untoward occurrence, but, on the contrary, was a natural and usual consequence of deceased's entering and remaining so long in the refrigerating room of the defendant. In the Micale case deceased worked in a mine which was uniformly and continuously wet for a month before he became ill. We there held that the chill, which heralded the attack of pneumonia and was a symptom of the disease, was not the unusual occurrence or untoward happening contemplated by the law. In the instant case the working conditions were not only unusual, but there was evidence of an objective happening, followed by deceased's increasing disability and death.

Judgment is affirmed.