## Parks *v.* Miller Printing Machine Company (et al., Appellant).

Argued March 29, 1939; reargued October 4, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellant.

*Samuel G. Wagner,* of *Wagner & Wagner,* with him *Harry Shapera,* for appellee.

OPINION BY MR. JUSTICE STERN, December 4, 1939:

In this case the Superior Court reversed a judgment of the Common Pleas entered in favor of defendant, and directed judgment to be entered on the award to plaintiff which had been made by the Workmen's Compensation Board (133 Pa. Superior Ct. 530).

Plaintiff's husband, hereinafter referred to as decedent, was a machinist by trade and worked for defendant, Miller Printing Machine Company, in Pittsburgh, as a "planer hand." On March 17, 1936, a part of that city was flooded. The water in defendant's plant reached a height of eleven feet, filling the basement and the first floor and covering the machinery with mud and dirt. When the waters had receded defendant employed a corps of workmen to clear up the debris, and directed the regular employes, including decedent, to clean their machines. Decedent started on this task about a week after the flood had occurred, but the floors were still damp and muddy. After working for eight days he became ill, and a day or two later called in a doctor, who made a diagnosis of pneumonia, which he attributed to the conditions under which decedent had been working. Decedent's death, as a result of the pneumonia, occurred shortly thereafter.

We thus have for consideration another of the perplexing cases in which prostration is suffered or disease contracted as the result of exposure to excessive heat, cold or other unusual environmental conditions, and the question arises whether such circumstances can be said to constitute an "accident." A study of the decisions upon that subject in the Superior Court and in our own Court reveals that, while they do not all agree in the reasoning and the principles upon which they purport to rest, they are not incapable of reconciliation. It would seem helpful, in considering the present case, to classify the more characteristic ones in order to obtain a guide to the proper adjudication of this type of litigation.

The first class comprises the cases where there is an involuntary, unexpected, fortuitous happening which causes the disease. This is the most familiar type, embracing what would universally be conceded to be accidents pure and simple. For example, where a lineman falls from a pole as a consequence of coming in contact with a wire charged with electricity, and fractures a rib, from which, a week later, lobar pneumonia develops (*Murdock v. New York News Bureau*, 263 Pa. 502) ; or where a miner is squeezed and bumped by a large stick of lumber, causing an abrasion on the side of his body and the result is a traumatic pleurisy which culminates in pneumonia (*Dumbluskey v. Philadelphia & Reading Coal & Iron Co.*, 270 Pa. 22) ; or where a workman receives an injury resulting in arthritis or inflammation of the hip-joint and terminating in pneumonia (*Dopkin v. Philadelphia & Reading Coal and Iron Co.*, 296 Pa. 71) ; or where a miner with wet clothing is compelled, due to the derailing of a hoisting car, to stand for an hour in a drafty place at the foot of the slope, as a consequence of which he contracts lobar pneumonia (*Broch v. Lehigh Valley Coal Co.*, 296 Pa. 502) ; or where an employe is struck by a piece of coal or rock, suffers contusions of various parts of the body,

and develops pleurisy which turns into pneumonia (*Borovski v. Philadelphia & Reading Coal & Iron Co.,* 101 Pa. Superior Ct. 304); or where an employe, clearing snow from the sidewalk in front of the store where he is employed, slips and falls into the gutter, receiving a wetting which brings on an attack of pneumonia (*Brown v. Moss,* 120 Pa. Superior Ct. 336). In all of these instances compensation was properly allowed.

The second group consists of cases where the work or act performed by the employe is voluntary, and not marked by any abnormal or unusual feature, but where there occurs an unexpected and unusual pathological result; that is to say, where the accident resides in the extraordinary nature of the effect rather than in the cause. A familiar illustration is where one engaged in ordinary manual labor unexpectedly suffers a muscular strain or internal lesion, as, for example, where the exertion in moving a piano causes an abscess which superinduces pneumonia (*Wolford v. Geisel Moving & Storage Co.,* 262 Pa. 454). In the field here under consideration are the sunstroke and heat prostration cases, which have been uniformly held to be compensable: *Lane v. Horn & Hardart Baking Co.,* 261 Pa. 329; *Matis v. Schaeffer,* 270 Pa. 141; *Clemens v. Cornish,* 295 Pa. 73; *Clancy v. Booth & Flinn Co.,* 109 Pa. Superior Ct. 452; *Consentino v. Union Paving Co.,* 113 Pa. Superior Ct. 295; *Trovato v. W. J. McCahan Sugar Refining Co.,* 122 Pa. Superior Ct. 499.[1] These rest upon the theory that the prostration is not the natural, probable and predictable result of an exposure to the prevailing conditions, but constitutes an extraordinary and unlooked-for mishap visited suddenly upon the employe while at work.

---

[1] While there are no appellate decisions in Pennsylvania in regard to frostbite, the same principle would seem to apply as in the case of sunstroke: see *Lane v. Horn & Hardart Baking Co.,* 261 Pa. 329, 334.

The third group, more indefinite but nevertheless well established, is where the exposure is, from a technical standpoint, voluntary, and the resulting pneumonia or similar disease reasonably foreseeable, but where the "accident" consists of an unusual and suddenly developing concatenation of circumstances which necessitates impulsive rather than deliberate action and under conditions markedly different from those attendant upon the usual course of the employe's regular work. For example, a workman was suddenly called upon to attempt a rescue of his father who had been buried by the slide of a culm bank; the effort lasted about $2\frac{1}{2}$ hours; a large quantity of water was used in the rescue work and the employe was drenched from his knees down; the result of this exposure was a cold which later took the form of pneumonia. The act thus performed by the employe was voluntary and under conditions from which a resulting pneumonia might readily have been anticipated, but compensation was allowed because of the extraordinary circumstances which demanded prompt action on the part of the employe under unusual and exceptionally unfavorable conditions (*Jones v. Philadelphia & Reading Coal & Iron Co.*, 285 Pa. 317). So, where the janitor of a building was called upon to turn off steam which was escaping because of the breaking of a pipe, and in doing so he had first to walk on the street in extremely cold weather, and then for a short distance through the hot steam in the basement, whereby his clothing became wet, and a day or two later he developed bronchial pneumonia, compensation was allowed on the ground that this was a situation well out of the ordinary and not reasonably to be foreseen in the course of the employe's usual work (*Heisler v. Lincoln Realty Company*, 121 Pa. Superior Ct. 516). Where a surgeon was one night summoned professionally to a hospital on an emergency call, the weather being cold and windy with snow and rain falling intermittently, and the operation, requiring about

an hour, had to be performed in the dispensary where the temperature was abnormally low, and as a result the surgeon contracted influenza-pneumonia, compensation was granted on the theory that, while his act in responding to the call was a voluntary one, there was such an exigency that the case was distinguishable from one where pneumonia results from intentional and deliberate exposure to the elements (*Roth v. Locust Mountain State Hospital*, 130 Pa. Superior Ct. 1). Similarly, where a boiler repairman, who ordinarily was not required to work in the boilers until at least sixteen hours had elapsed after the fires had been drawn, was called upon on one occasion to make repairs before the lapse of such an interval, and thereby was subjected for a few hours to extreme heat, which contributed to his death from acute nephritis, compensation was allowed because of this extraordinary exposure, notwithstanding the fact that it was the employe's regular duty to repair the boilers (*Evans v. Hazle Brook Coal Co.*, 134 Pa. Superior Ct. 462).

The class of cases just discussed is exceptional and to be distinguished carefully from the final group, which comprises those cases where the exposure causing the pneumonia or similar disease is not only intentional but deliberate and protracted, and in the regular course of the employe's work, and therefore there is no accident either in the happening of an untoward event, or in an unexpected and exceptional result, or in a chain of extraordinary events subjecting the employe to an exigent and unanticipated exposure foreign to his ordinary employment. Hence, in these cases compensation was properly refused. As has been frequently pointed out, an employer is not, under the Workmen's Compensation Act, an insurer of the life and health of his employes. Thus where emphysema, a disease of the lungs, is contracted by continued contact of the employe with smoke and fumes thrown off by electric generators, there is no accident within the meaning

of the Act, but rather an occupational disease (*Mauchline v. State Insurance Fund*, 279 Pa. 524). Where a carpenter, in the course of his work, makes measurements in a refrigerating room, the temperature of which is exceedingly low, so that he suffers a chill and develops pneumonia, there is no accident, the chill being, not the consequence of a fortuitous and unexpected event, but a natural and foreseeable result of the deliberate act which preceded and caused it (*Lacey v. Washburn & Williams Co.*, 309 Pa. 574). There is no accident where an employe is assisting in building a roof, and, as it happens to be raining, he gets wet to the skin and contracts a cold from the exposure, with a subsequent development of pneumonia (*Gibson v. Kuhn*, 105 Pa. Superior Ct. 264); nor where a person works for a month in a mine which is uniformly and continuously wet, and as a result he is stricken with pneumonia (*Micale v. Light and State Workmen's Insurance Fund*, 105 Pa. Superior Ct. 399); nor where a miner, while waiting a routine period of five minutes to be taken up on an elevator, is subjected to an ordinary draft, and takes a chill which turns into lobar pneumonia (*Mills v. Susquehanna Collieries Co.*, 107 Pa. Superior Ct. 432); nor where pneumonia is contracted by a miner working in a gangway which is covered with six inches of water, the work being ordinary and the presence of the water not unusual (*Waleski v. Susquehanna Collieries Co.*, 108 Pa. Superior Ct. 342); nor where a mine is constantly damp and there is water dripping from the chutes all the time, and an employe whose work is to run a motor in the colliery is stricken with pneumonia, the exposure to the dampness and water being in the usual course of his employment (*Poklembo v. Hazle Brook Coal Co.*, 116 Pa. Superior Ct. 532); nor where a brick mason, working in a firebox attached to which a ventilating fan is in operation, is seized with a chill culminating in pneumonia (*Wilkins v. McSorley*, 119 Pa. Superior Ct. 442); nor

where a person working at a booth in a convention hall in which there are drafts and temperature fluctuations receives a chill which results in influenza (*Biglin v. Pennsylvania Department of Labor and Industry*, 133 Pa. Superior Ct. 221). In all of these cases the employe voluntarily exposed himself to the prevailing conditions without any unusual circumstances impelling him to do so, and the pneumonia was a foreseeable and not unlikely result.[2]

In our opinion the facts in the instant case present a situation falling within the final, or non-compensable, group of cases above described. It is true that the flood in the City of Pittsburgh, occurring two weeks before decedent's illness, was an "accident," and if it had caused an emergency situation which impelled decedent, suddenly and unexpectedly, and outside of the ordinary course of his work, to expose himself to abnormal conditions which brought on an attack of pneumonia, he might have been justified in claiming compensation. But an accident preceding the one upon which the claim is based is of significance only if it causes an exigent situation, which, by a chain of succeeding circumstances, culminates in injury, as in the Jones, Heisler, Roth, and Evans cases hereinbefore discussed. Thus the San Francisco earthquake of some years ago was an "accident," but an employe engaged in the task of salvage and restoration during the sev-

---

[2] There are two pneumonia cases, *Boyle v. Philadelphia & Reading Coal & Iron Co.*, 99 Pa. Superior Ct. 178, where a miner worked in a gangway filled with water, and *Senlock v. Philadelphia & Reading Coal & Iron Co.*, 104 Pa. Superior Ct. 156, where a miner worked for several months in a wet gangway, in each of which cases compensation was allowed and which are not in accord with the other cases here analyzed. In the Boyle case, however, the question whether there had been an accident was not raised, and both cases preceded the decision in *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, by which they may be regarded as superseded.

eral months or years which followed would not, by reason of the earthquake, have become entitled to workmen's compensation if, in the course of his work, he contracted pneumonia through exposure to weather conditions. While, in the present case, it was the flood which made necessary the cleaning of the machinery, this operation was a protracted labor, and those who engaged in it voluntarily and deliberately exposed themselves to the dampness which they knew existed. Decedent worked for eight days before he became ill, returning to the job each day in the usual fashion. Nor can the surrounding conditions during that time be fairly characterized as extraordinary. There was no sudden, intense exposure to water or to cold. The most that can be said is that there was dampness in the plant and mud on the floors as lingering effects of the flood. That decedent was by trade a machinist does not affect the situation from a legal standpoint. Even assuming —what is far from certain—that in cleaning his machine he was doing something foreign to his ordinary work, he engaged in that occupation for the eight-day period, nor did the fact that he was occupied in cleaning instead of operating the machine in any way expose him to greater risk of disease. We cannot escape the conclusion that there is no "accident" within the meaning of the Workmen's Compensation Act when an employe contracts pneumonia as the result of working for several days in a factory, the floors and walls of which are damp, even though the dampness happens to have been caused by a flood which had occurred a week before he started the work.

The order of the Superior Court is reversed, and the judgment for defendant entered by the Court of Common Pleas of Allegheny County is affirmed.