# Boyer *v.* Aluminum Company of America, Appellant.

Argued April 21, 1941.

Before Keller,
P. J., Cunningham, Baldrige, Stadtfeld, Rhodes,
Hirt and Kenworthey, JJ.

*R. E. Best,* of *Smith, Best & Horn,* for appellant.

*Vincent R. Smith,* with him *P. K. Jones,* for appellee.

Opinion by Stadtfeld, J., July 2, 1941:

David Arthur Boyer, claimant's decedent, while seated at his desk in his office on employer's premises, died on the 6th day of April, 1936, at about 1:30 P.M. He was taken by fellow-employees to the first aid or emergency room on the premises of the employer, and examined by Dr. J. B. McConnaughey, who gave as his professional opinion that Boyer's death was caused by a coronary occlusion. At the time of his death, and for many years prior thereto, Boyer had been employed by the Aluminum Company of America as a supervising electrical engineer, with an office located in the New Kensington plant of the corporation.

No claim for compensation was made upon the employer prior to the filing of the petition with the workmen's compensation bureau, shortly before the expiration of the one year limitation period, to-wit, on March

15, 1937, in which it was alleged: "...... The death of the decedent was due to cardiac collapse and dilatation of the heart which was caused by overwork, strain, lifting and wet conditions which the decedent suffered while doing emergency work caused by the St. Patrick's day flood of Mar. 17, 1936. Now the said death was caused by overwork and exertion during the said St. Patrick's day flood."

Defendant filed an answer, denying Boyer's death was caused by overwork, lifting, strain and wet conditions, and alleging that Boyer was employed as an electrical engineer, whose duties were supervisory in character, and that he performed no manual labor or work, and further, that his death on April 6, 1936, resulted from a heart condition, in no way connected with his employment by defendant.

The matter was assigned to Referee Veschio, who, after several hearings, on the 6th day of April, 1938, filed his findings of fact, conclusions of law, and made an award of compensation to the claimant. From this award, an appeal was taken to the compensation board, and in an opinion filed June 16, 1939, by Commissioner Swaney, concurred in by Ullman, Chairman, and Fitzgerald, Commissioner, the board affirmed the findings of fact, conclusions of law and award of the referee and dismissed the appeal. Thereafter, an appeal was taken to the Court of Common Pleas of Westmoreland County, and on the 27th day of May, 1940, the court, in an opinion by KEENAN, J., overruled appellant's exceptions to the findings of fact and conclusions of law of the referee, sustained by the board, and entered judgment on the award. This appeal followed.

The board made, inter alia, the following findings: "...... The decedent was forty years of age and his duties did not require him to exert physical effort or perform manual labor. He had always been in good health and about two months before the occurrence of

the alleged fatal accident had been examined for insurance and was found to be in normal health. In particular, he was found to have a normal heart and normal blood pressure. Following the occurrence of the historic St. Patrick's day flood, during which the defendant's plant was flooded the decedent and his fellow employees worked strenuously and for long hours to remove the accumulated debris and mud which the receding flood left in the defendant's plant. During this period the decedent worked from six A.M. until midnight and at home during the remainder of the night had his sleep interrupted by numerous telephone calls from the plant. The plant was without heat and was damp. On March 25th or 26th, Mrs. Helen E. Boyer, wife of the decedent, called at the plant around midnight to bring her husband home. On that occasion her husband came out of the plant wearing rubber boots and was soaking wet from the waist down. On that occasion he requested his wife to wait a few minutes while he returned to the plant. He went back into the plant and in about 20 or 25 minutes returned again holding his side and vomited before he got into the car. At that time he told his wife that he had lifted something and when he lifted it he felt something cracking in his side. He further told his wife's sister, 'You will have to drive home—I am too sick.' During the night he passed blood through his mouth and through the stool. He went home and went to bed and the next day it was noticed that his color had changed. Dr. Wolf, who examined the decedent on March 26 or 27, 1936, discovered that the decedent had the symptoms of flu infection. The decedent apparently returned to the plant on April 6, 1936 and while seated at his desk was suddenly stricken. Death was due to acute dilatation of the heart, which, based upon medical testimony, therefore found was the result of the strain the decedent suffered during the flood emergency plus the lifting he did in the plant, accompanied by flu infection."

Mrs. Boyer fixed the date of her trip to the plant as the night of *March 25th*. Her sister, who went with her, fixed it as *March 26th*, but, on cross-examination, said it might have been the *26th or 27th*—she was making a rough guess.

None of these alleged occurrences, nor the alleged statement by Boyer of his lifting and hurt or injury, was told to the attending physician, the fellow-employees who visited Boyer while he was ill, nor any officer or physician of the employer, at or after Boyer's death, until the compensation petition was filed shortly before the expiration of the one year period.

There was no testimony by claimant to definitely locate or fix that part of the employer's premises where the alleged strain or injury from lifting was sustained, nor was any mention made of any lifting, strain or injury to any of the many employees with whom the deceased came in contact. There is no contention on behalf of claimant that her husband was subjected to any unusual effort or exertion on the day of his death, April 6, 1936, or on the days immediately preceding, beginning with the 2d day of April, when he came back to work. The only testimony relating to a causal connection between the death of Boyer and the alleged strain or lifting is that of Dr. R. A. Wolfe, the family physician called by claimant, who gave as his opinion: "A. My own personal opinion is all I am entitled to, I feel he had some hemorrhage. I feel that he was probably overworking plus the weakness ensuing from the hemorrhage, he contracted a 'Flu' the sum total of which was too much for the man's heart, so that when he did return to work too soon, before he should have, his heart would not stand it, and I think he just got an acute dilatation and died. Q. Then you take into consideration the fact that the man was working during an emergency in a cold mill in mud, dampness, very frequently getting wet, and if you had further in your

history the fact that he came out of the mill on the night of March 25th or 26th, stooped over, had to be assisted in the car, and that he vomited, that one of the witnesses there gave him a handkerchief to wipe his mouth and it came back stained with blood, and he stated he strained himself lifting a motor or something, would you take in those facts in your answer as to the cause of death? A. That would be included in my reference to his having lost some blood. I feel that was a marked predisposing factor in his death. The loss of blood, the 'Flu' infecton, I feel the two taken together were too much for his already taxed heart muscles." We believe that this is not sufficient to support a finding that Boyer's death resulted from accidental injury.

In *Gausman v. R. T. Pearson Co.*, 284 Pa. 348, 131 A. 247, in which the opinion was written by Mr. Justice WALLING, it was held (p. 352) : "...... Hence, as the burden of proof rested upon claimant, it cannot be found that he suffered a heat exhaustion or that such was the superinducing cause of the apoplexy. Where an injury may be the result of one of two or more causes, for only one of which defendant is liable, the burden is on plaintiff to individuate that one as the proximate cause of his damage (*Sullivan v. Balt. & Ohio R. R. Co.*, 272 Pa. 429), otherwise there can be no recovery: *Zimmerman v. Weinroth*, 272 Pa. 537, 539; *Miller v. Director Gen. R. R.*, 270 Pa. 330; *Bruggeman v. York*, 254 Pa. 430, 435. Furthermore, the burden of proof is not met by the testimony of a witness when so conflicting as to render any inference drawn therefrom a mere guess: *Goater v. Klotz*, 279 Pa. 392, 396; *Zenzil et al. v. Del., Lack. & W. R. R. Co.*, 257 Pa. 473; *Mulligan v. Lehigh Traction Co.*, 241 Pa. 139; *Cawley v. Balt. & Ohio R. R. Co.*, 44 Pa. Superior Ct. 340. ......".

Where the expert testimony of a medical witness is relied upon it must establish a direct relation between the injury received from an accident and the disease

resulting in the death of the deceased: *Parzuhoski v. Pgh. Term. Coal Corp.*, 140 Pa. Superior Ct. 179, 13 A. 2d 879.

Hence, if Boyer's death resulted from overwork, in part from weakness following hemorrhage, in part from a flu infection, and in part from returning to work too soon, it certainly cannot be said to have been the direct result of injury, and was not a compensable claim.

Dr. J. B. McConnaughy, the company physician, was called by claimant, and testified in part as follows: "I saw him (Boyer) on the date of his death, April 6, 1936, I believe. Q. Where did you see him, Doctor? A. In the first-aid department of the Aluminum Company of America. Q. How did he come to the first-aid department? A. He had been assisted into the first-aid department by a number of men that had placed him on a stretcher ...... Q. When he was brought into the first-aid room what was his condition? A. When I saw him he was dead. Q. What was his physical condition— did you make an examination? A. Yes, sir. Q. What did you find in making your physical examination? A. There was no evidence of external injury to the body; there was no evidence of heart-beat present; the body was still warm; no rigor mortis had set in. Q. Did you strip the decedent? A. His shirt was opened at the neck and half-way down his chest—he was not stripped. Q. What was the color of the decedent's face? A. At the time I saw him there was a dull gray ashen appearance to the face with a slight blueness around the mouth. Q. Doctor, you state that you made an examination? A. Yes, sir, I stated I made an examination. ...... Q. What was your diagnosis as to the cause of death of the decedent? A. After talking with the coroner—Q. Your own diagnosis, Doctor? A. My own diagnosis was coronary occlusion ...... Q. Could a coronary thrombosis be caused by or produced by a strain? A. *Not to my knowledge.* Q. If, however, a

strain as a result of lifting caused some breakage in some other part of the body could a blood clot come from that? A. It is possible that it could ...... In my professional experience I have never come in contact with a case of coronary occlusion following a strain or lifting. Q. Did you receive any report of any alleged injury or strain resultant from lifting sustained by Mr. Boyer? A. No. ...... Q. What led you to give that diagnosis? A. The reason I gave that diagnosis is that in the absence of an acute injury, that you have to think about, one is coronary occlusion or coronary thrombosis—the terms are used interchangeably; dilatation of the heart you must have an unusual amount of work thrown on the heart muscles suddenly; and this man gives a history of being seated in a chair at his desk, doing no laborious work, and suddenly slumping down. By Mr. Best: Q. You got a history of that? A. Yes. Q. The man didn't give it to you? A. No. In this particular case the history given me was that the man was sitting quietly in a chair at his desk and suddenly slumped over unconscious. In my professional opinion acute dilatation of the heart could not have occurred in this case."

The case of *Parks v. Miller Printing Machine Co.,* 336 Pa. 455, 9 A. 2d 742, is one in which the conditions are exactly similar to those of the instant case. The claimant's husband was a machinist employed by the Miller Printing Machine Company in Pittsburgh, the plant of which company, on the 17th of March, 1936, was flooded to the height of eleven feet, filling the basement and first floor, and covering the machinery with mud and dirt. When the waters had receded, a corps of workmen were employed to clear up the debris—among others, claimant's decedent—who, after working for eight days, became ill, was discovered by his attending physician to be suffering from pneumonia, which the physician attributed to the conditions under which

decedent had been working, and from which disease death resulted. The Supreme Court, refusing compensation, said on p. 464: "While, in the present case, it was the flood which made necessary the cleaning of the machinery, this operation was a protracted labor, and those who engaged in it voluntarily and deliberately exposed themselves to the dampness which they knew existed. Decedent worked for eight days before he became ill, returning to the job each day in the usual fashion. Nor can the surrounding conditions during that time be fairly characterized as extraordinary. There was no sudden, intense exposure to water or to cold. The most that can be said is that there was dampness in the plant and mud on the floors as lingering effects of the flood. That decedent was by trade a machinist does not affect the situation from a legal standpoint. Even assuming—what is far from certain—that in cleaning his machine he was doing something foreign to his ordinary work, he engaged in that occupation for the eight-day period, nor did the fact that he was occupied in cleaning instead of operating the machine in any way expose him to greater risk of disease. We cannot escape the conclusion that there is no 'accident' within the meaning of the Workmen's Compensation Act when an employe contracts pneumonia as the result of working for several days in a factory, the floors and walls of which are damp, even though the dampness happens to have been caused by a flood which had occurred a week before he started the work."

We have quoted from the last cited case only because it disposes of any right to compensation because of the conditions arising out of the floor insofar as it is claimed to have been a contributing factor to decedent's condition before his death. As to the other factors on which appellee relies, we are of the opinion that the testimony is too vague and indefinite on which to base the finding of an accident or resultant injuries therefrom. In view of our conclusions as above stated, it is not necessary

316

to discuss the question of notice. Much as we sympathize with the claimant, we cannot, after careful examination of the record, find sufficient competent evidence to sustain an award.

The assignments of error are sustained, the judgment reversed and now entered in favor of defendant.