Lillian L. Totten *v.* Ruth Davis and Workmen's Compensation Appeal Board. Lillian L. Totten, Appellant.

Argued March 4, 1976, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three.

*James H. Rowland, Jr.,* with him *Rowland and Rowland,* for appellant.

*Philip D. Freedman,* with him *Caldwell, Clouser & Kearns,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE ROGERS, March 24, 1976:

Lillian L. Totten, a workmen's compensation claimant, has appealed from a decision of the Workmen's Compensation Appeal Board affirming a referee's order denying her claim for compensation.

The events giving rise to the claim occurred prior to the effective date of the 1972 amendments to The Pennsylvania Workmen's Compensation Act so that the claimant was required to prove that her injuries were sustained in an accident.[1] Both the referee and the Board concluded that claimant's proofs did not establish an accident. The claimant contends that the evidence placed her claim within the unusual pathological result doctrine. Under that doctrine, an accident occurs where the work or act performed by the employe is voluntary and not marked by any abnormal or unusual feature, but where there occurs an unexpected and unusual pathological result. *Parks v. Miller Printing Machine Co.*, 336 Pa. 455, 9 A.2d 742 (1939). A corollary to the doctrine is that there may be no recovery if it is shown that a preexisting physical condition contributed to the injury. *Yuhas v. Bethlehem Steel Corporation*, 8 Pa. Commonwealth Ct. 302, 303 A.2d 266 (1973). Otherwise stated, the doctrine does not apply if the claimant's preexisting physical weakness is causally connected to the injury suffered in the course of the employe's normal duties even if her work experience accelerates the pathology to a painful and disabling consequence. *Yuhas v. Bethlehem Steel Corporation, supra.*

The referee found that the claimant in this case had a preexisting physical weakness—that of a chronic strain of the lumbosacral and cervical spine. His finding is well supported by the record.

The event which gave rise to the claim in this case occurred on April 7, 1972 when Ms. Totten, in the course of her employment as a helper in a snack bar, stooped to pass under a counter dividing the food preparation and serving areas, an act which she performed many times

---

1. Section 301(a) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §431. The 1972 amendment allowing compensation for injuries alone was by the Act of March 29, 1972, P.L. 159, 77 P.S. §431.

before. On the occasion in question she experienced a popping sensation in her back and pain. She was twice admitted to the hospital and suffers disabling back pains. Her condition was diagnosed by physicians as a strain of the lumbosacral and cervical spine.

At the referee's hearing, the claimant adduced the testimony of Monroe Schneier, a doctor of chiropractic, who testified that the claimant had been a patient of his since October 15, 1971 suffering from low back pains. In 1971 Dr. Schneier had X-rays taken which revealed subluxations (malpositionings) "at the level of T12 L4 L5 and the left sacroiliac area." Dr. Schneier further testified that between October 15, 1971 and April 7, 1972, the claimant's condition improved and that on the latter date she had no pain but continued under maintenance care, which he described as follows:

"I mean that when we have people who are chronically ill for a period of time and even after we get results, even after they come out of their problems and they no longer experience symptoms, we continue them on maintenance because we have learned that symptoms are not the true test of whether or not there is a problem. So even though people have absolutely no symptoms, depending on the length that they have been ill and the problem that they have, after the symptoms are gone and they are coming along fine, we maintain them periodically, we see them periodically to maintain them and to continue the body's process of healing themselves."

Dr. Schneier had new x-rays made in October 1973 which although showing subluxations additional to those seen in the 1971 x-rays, revealed a major subluxation at the same places where such pathology was observed in the 1971 x-rays.

A medical doctor who examined the claimant after the April 7, 1972 occurrence, testified that he felt "that

historically by examination . . . she had chronic recurring strain of both the lumbosacral and cervical spine."

Our review of the evidence satisfies us that the referee's findings of a preexisting chronic recurring strain of both the lumbosacral and cervical spine was supported by the evidence and that his and the Board's conclusions that the claimant had not proved an accident within the unusual pathological doctrine were not erroneous.

ORDER

AND NOW, this 24th day of March, 1976, the Order of the Workmen's Compensation Appeal Board is affirmed.